**Mrs. Roger McMillan REEB,**
**Plaintiff-Appellant,**

v.

**ECONOMIC OPPORTUNITY ATLANTA, INC., Defendant-Appellee.**

No. 74–2913.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 1975.

Elizabeth R. Rindskopf, John R. Myer, Joseph Ray Terry, Jr., Atlanta, Ga., for plaintiff-appellant.

Ronald J. Armstrong, Charles T. Magarahan, Tucker, Ga., for defendant-appellee.

Before BROWN, Chief Judge, and WISDOM and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

Under Title VII of the Civil Rights Act of 1964, a person seeking relief from employment discrimination was required to file a charge with the Equal Employment Opportunity Commission within ninety days after the alleged unlawful employment practice has occurred. 42 U.S.C. § 2000e–5(d) (1970).[1] This appeal presents the question whether that provision bars a suit by a plaintiff who has not learned nor in the circumstances could reasonably have been expected to learn the facts that would support a charge of an unlawful employment practice—until the ninety day period had already passed. We pretermitted this question in Belt v. Johnson Motor Lines, Inc., 5 Cir. 1972, 458 F.2d 443, 445 n. 3. The case is an unusual posture. A trial on the merits was held before the district court. After the evidence had been heard the defendant orally moved for the first time to dismiss the complaint for want of jurisdiction.

The court found that Mrs. Reeb, a white woman, was employed by Economic Opportunity Atlanta (EOA) from November 7, 1968, through September 24, 1969. She had previously worked for EOA. During the period in question here, she was initially hired on a contract basis to serve as the first director of EOA's newly established consumer services project. The district court further stated the basic facts as follows:

. . . On January 2, 1969, she became a permanent employee and continued in a permanent status until August 29, 1969. Upon transfer from contract status to the position of permanent employment, Mrs. Reeb encountered difficulty establishing her correct salary level. In an effort to recoup the losses resulting from error in her permanent salary level, she returned to contract status. This contract was for a one-month period only, presumably to be renewed each month. After completion of her first monthly

---

1. We note at the outset that the 1972 amendments to the Civil Rights Act of 1964 expanded many of the timing requirements established in the original act. Specifically, the section at issue in this case, 42 U.S.C. § 2000e–5(d) was redesignated 42 U.S.C. § 2000e–5(e), and the ninety day requirement was expanded to one hundred and eighty days. The 1972 amendments have no bearing on the present case. An examination of the legislative history of the amendments, as reported in 2 U.S. Code, Cong. & Admin.News pp. 3224–3288 (1972), does not shed any light on why this particular timing provision was expanded, nor is it helpful in addressing the problem involved in this case.

contract, she was notified by a letter from EOA that her employment contract would not be renewed because of a 'limitation of funds.' This letter was dated September 24, 1969, and indicated that her termination would be effective immediately. Initially, Mrs. Reeb accepted this rationale for her termination.

In the spring of 1970, Mrs. Reeb, for the first time, learned that the position of Director of Consumer Services had subsequently been refilled on November 10, 1969, by an allegedly less qualified male employee. When the plaintiff learned of her replacement (April 21, 1970) she immediately filed charges (April 28, 1970) of sex discrimination with the Equal Employment Opportunity Commission.

The district court dismissed the case for want of jurisdiction, because Mrs. Reeb had not brought her complaint before the EEOC within ninety days of the alleged discriminatory discharge. We vacate the judgment and remand the case to the district court.

\*　　\*　　\*　　\*　　\*　　\*

The statute in force at the time the events involved in this case took place provided:

> A charge under subsection (a) [governing situations in which no state agency had jurisdiction over the ·kind of complaint involved] of this section shall be filed within ninety days after the alleged unlawful employment practice occurred　.　.　..

42 U.S.C. § 2000e–5(d) (1970). This ninety day requirement applied only to charges filed with the EEOC. In terms, at least, it had nothing to do with the jurisdiction of the United States district

courts over a suit later authorized by the EEOC.

The only explicit statutory requirements in effect at the time were that the charge had been properly referred to the EEOC for possible voluntary conciliation and, in appropriate circumstances, to a state agency having jurisdiction over the complaint; that the EEOC had issued the so-called right-to-sue letter; and that suit had been brought within thirty days of the notification of right to sue.[2]

It is not clear, as this Court has noted before, why the ninety day requirement has any relevance to the jurisdiction of the district court. It might well be argued that once the EEOC, the agency Congress created to administer the Act, determined that a charge was timely, has investigated the charge, and has issued a right-to-sue letter, that its determination and commitment of resources "should be open to jurisdictional challenge [in the district court] only on the ground that [the action of the EEOC] was without a rational basis." Boudreaux v. Baton Rouge Marine Contracting Co., 5 Cir. 1971, 437 F.2d 1011, 1015 n. 6.

The courts, however, have to make their own determination whether the district court has jurisdiction, rather than defer to the EEOC in the first instance. A uniform rationale in interpreting the ninety day limitation has not emerged. The Seventh Circuit has suggested the source of some of the confusion in its analysis of the legislative history of the timing requirements of the 1964 Act in general. It has noted that "as part of a compromise which made it possible to pass the Civil Rights Act of 1964, its sponsors agreed to the inclusion of provi-

---

2. Indeed, this Court, in holding that an actual finding by the EEOC that there is no reasonable cause to believe that a violation of the Act has occurred will *not* defeat jurisdiction of the district court in a subsequent civil suit, said (although in *dictum*): "．．．the tenor of the cases has established only two jurisdictional prerequisites to suit in federal court under Title VII: (1) the filing of a complaint with the

EEOC and (2) the receipt of the statutory notice of right to sue." Beverly v. Lone Star Lead Construction Corp., 5 Cir. 1971, 437 F.2d 1136, 1139–40 (footnote omitted). The Court did not have the problem of construing the ninety day requirement before it, and, as noted in the text, subsequent decisions of this Court have explicitly left open the question how the requirement should be construed.

sions which impose an extremely short limitations period on private claims and require a resort to state procedures, where available, as a condition precedent to a private action in the federal courts." Moore v. Sunbeam Corp., 7 Cir. 1972, 459 F.2d 811, 820–21.

The terminology applied to the ninety day requirement has not been consistent. Some courts, like the district court in the present appeal, refer to it in a loose sense as "jurisdictional", usually meaning that unless the complaint is filed with ninety days after the alleged discriminatory act, a suit cannot be maintained in any circumstances. But this characterization has often been employed in cases involving "continuing" discriminatory practices which are said to "toll" the running of the ninety day period, and in such cases may therefore be regarded as dictum. See, e. g., Cox v. United States Gypsum Co., 7 Cir. 1969, 409 F.2d 289. Some courts have drawn an analogy between the ninety day requirement and statutes of limitations. These courts may or may not use the term "jurisdictional" in conjunction with their analysis, but they frequently apply the equitable doctrines that have grown up in the common law regarding estoppel and tolling to prevent an injustice that might otherwise be worked by a literal application of the statute.

Conceptual confusion springs from a court's describing the ninety day requirement as "jurisdictional" but proceeding on the basis of an analogy to how statutes of limitations have been construed. Statutes of limitations, designed as they are primarily to prevent stale claims, are traditionally thought to be subject to much more flexible construction than statutes which confer subject matter jurisdiction upon courts. For example, many courts hold that a party may waive the defense of the statute of limitations, but virtually all courts insist that a lack of subject matter jurisdiction may never be waived and must be invoked by the court itself if the parties fail to raise it.

The cases in this circuit have not clearly characterized the time limitations contained in the Act. In Culpepper v. Reynolds Metals Co., 5 Cir. 1970, 421 F.2d 888, this Court decided that the ninety day requirement must give way in a case where the employee had first sought to utilize grievance procedures established under a labor contract rather than proceed immediately before the EEOC. "We, therefore, hold that the statute of limitations, which has been held to be a jurisdictional requirement, is tolled once an employee invokes his contractual grievance remedies in a constructive effort to seek a 'private settlement of his complaint.'" 421 F.2d at 891. No earlier case in this circuit had held that the requirements were "jurisdictional", although other circuits had used that term. The thrust of the *Culpepper* holding, however, is revealed in the use of the term "statute of limitations". The Court said that the timing provisions will be subject to the same sort of equitable modifications that are applied to statutes of limitations, with the important additional requirement that these modifications will be applied in the interest of effectuating the broad remedial purposes of the statute. Thus, even in circumstances where a modification might be denied application at the common law, the modification might still be applied if the court felt that doing so would further the purposes of the statute considered as a whole. For example, in *Culpepper* itself, it might be said that the plaintiff elected an alternative remedy and might have been denied the benefit of tolling at common law on that ground. In *Culpepper,* one statutory purpose this Court found that justified applying the equitable modification was the "great emphasis in Title VII on private settlement and the elimination of unfair practices without litigation." 421 F.2d at 891, *citing* Oatis v. Crown Zellerbach, 5 Cir. 1968, 398 F.2d 496.

Later, in Boudreaux v. Baton Rouge Marine Contracting Co., 5 Cir. 1971, 437 F.2d 1011, 1015, this Court noted that the statement in *Culpepper* regarding a "jurisdictional requirement" was dictum and went on to say that "[s]ince we have determined for other reasons   .   .   .

that appellant has properly stated a claim for relief and that summary judgment was improperly granted, we do not find it necessary to decide for the first time whether the 90-day requirement is in fact a 'jurisdictional prerequisite' to suit under Title VII." In Belt v. Johnson Motor Lines, Inc., 5 Cir. 1972, 458 F.2d 443, 445 n. 3, this Court again recognized that the question whether the ninety day requirement was "jurisdictional" is still open in this circuit. The question is squarely presented in the present case.

We have found only one decision on the specific question involved in this case.[3] The *ratio decidendi,* however, of the leading cases dealing with timing requirements in general under the Act compels the conclusion that the ninety day requirement is not "jurisdictional" in the sense that compliance with it *vel non* determines the jurisdiction of the district court, without respect to any of the other circumstances in a particular case. We accept the view that the requirement should be analogized to statutes of limitations. Equitable modifications, such as tolling and estoppel, that are applied to them should also be applied here. The Act contemplates that complaints initiating EEOC proceedings will be brought in the first instance by laymen. It is reasonable, therefore, for courts to refuse to apply technical rules of common law pleading to charges filed initially with the Commission. *See, e. g.,* Georgia

Power Co. v. EEOC, 5 Cir. 1969, 412 F.2d 462; Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28; Weeks v. Southern Bell Tel. & Tel. Co., 5 Cir. 1969, 408 F.2d 228; Choate v. Caterpillar Tractor Co., 7 Cir. 1968, 402 F.2d 357; Note, A Look at *Love v. Pullman,* 37 U.Chi.L.Rev. 181 (1969). And, of course, remedial legislation such as Title VII of the Civil Rights Act of 1964 is entitled to the benefit of liberal construction.

Our view that the ninety day requirement is not "jurisdictional" in the strict sense of that term finds further support in at least two cases decided since *Culpepper.* The United States Supreme Court in Love v. Pullman Co., 1972, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679, gave a flexible interpretation to related timing provisions under the 1964 Act. At the time *Love* was decided, the statute required that the complaint to the EEOC "shall be filed by the person aggrieved within two hundred and ten days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings . . ., whichever is earlier . . . ." 42 U.S.C. § 2000e–5(d) (1970). The charging party had sent a letter of complaint to the EEOC without first filing a complaint before the state agency. This letter was technically premature. The EEOC, however, treated the letter as a complaint but did not formally file it. Rather, it advised the

---

3. In Antonopulos` v. Aerojet-General Corp., E.D.Cal.1968, 295 F.Supp. 1390, 1394, the court said:

> Defendant . . . contends that the charge filed . . . was not filed with the EEOC until six and one half months after the alleged unlawful practice occurred. Defendant argues that the suit must be dismissed as to them since the statute gives a person only ninety days to file the charge. . . . The parties have cited no cases on this question and as far as I have been able to determine, it is a matter of first impression. In order to dismiss on this ground I would have to hold that, as a matter of law any person not filing a charge with the Commission within ninety days of an unlawful employment practice has forever lost his right of action for that unlawful practice re-

> gardless of the circumstances. This I will not do.
>
> Plaintiffs have made several explanations to justify their delay. They argue that they filed within two weeks of the time they first discovered that they were discharged for an unlawful reason. They have also raised an innuendo of deceit by the defendant and their labor union. There are issues of fact as to whether plaintiffs could reasonably have known that their discharge was unlawful within the ninety-day period and whether defendant's deceit, if any, should estop it from raising this issue.
>
> We are not dealing with businessmen-plaintiffs or plaintiffs accustomed to consulting lawyers about their rights. This law is a remedial one . . . . .

state commission that it had received a complaint. The state commission, in turn, later notified the EEOC that it had determined to take no further action at which time the EEOC proceeded with its own investigation. It later issued a right-to-sue letter to the plaintiff. The district court dismissed the suit, and the court of appeals affirmed, but the Supreme Court reversed. It said:

> We cannot agree with the respondent's claim that the EEOC may not properly hold a complaint in 'suspended animation,' automatically filing it upon termination of the state proceedings. We see no reason why further action by the aggrieved party should be required. The procedure complies with the purpose both of § 706(b) [42 U.S.C. § 2000e–5(b)], to give state agencies a prior opportunity to consider discrimination complaints, and of § 706(d) [42 U.S.C. § 2000e–5(d)], to insure expedition in the filing and handling of those complaints. *The respondent makes no showing of prejudice to its interest.* To require a second 'filing' by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality.
>
> Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.

404 U.S. at 526, 92 S.Ct. at 618 (emphasis supplied; footnotes omitted). Despite the clear requirement of 42 U.S.C. § 2000e–5(d) (1970) that the complaint must be filed by the person aggrieved within two hundred and ten days after the practice occurred or the state agency has terminated its proceedings, whichever is earlier, the Supreme Court thus approved a different practice adopted by the EEOC because it appeared that the statutory purposes would be equally well served by the practice and that no prejudice to the defendant had been demonstrated.

More recently, this Court in Franks v. Bowman Trans. Co., 5 Cir. 1974, 495 F.2d 398, 402–406, *cert. granted,* 420 U.S. 989, 95 S.Ct. 1421, 43 L.Ed.2d 669, 1975, gave a liberal construction to the following statutory language of 42 U.S.C. § 2000e–5(e):

> If within thirty days after a charge is filed with the Commission . . . the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter be brought against the respondent named in the charge (1) by the person claiming to be aggrieved. . .

The plaintiff had not brought his action until over a year had elapsed after the issuance of the first right-to-sue letter by the EEOC. He alleged that the first letter had been received and misplaced by his nine year old nephew and that he had no effective notice of the issuance of the letter. This Court construed the requirement that the "Commission shall so notify the person aggrieved" to preclude application of the doctrine of "constructive receipt" often applied in cases dealing with service of process or formation of contracts. We held that "the statutory notification is complete only upon actual receipt of the suit letter", because that rule "accords with the view we have expressed in prior cases that Congress did not intend to condition a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute." 495 F.2d at 404.[4]

From these cases, it is clear that the Supreme Court and this Court have not treated time limitations contained in Title VII of the Civil Rights Act of 1964 as inflexible "jurisdictional" absolutes, but have modified them in the interest of giving effect to the broad remedial purposes of the Act. We must, accordingly, address the question whether there are circumstances in the present case to ex-

---

4. This flexible treatment of the thirty day requirement is particularly noteworthy in the present context because this Court had earlier held that the requirement was a "jurisdictional" prerequisite to a suit in the district court. See footnote 2 *supra.*

cuse the plaintiff from compliance with the ninety day requirement. We conclude that there are.

The defendants have not demonstrated —indeed, they have not alleged—any prejudice to their cause attributable to the failure to comply with the ninety day requirement. The absence of prejudice was one of the elements relied upon by the Supreme Court in *Love*. Moreover, the EEOC took the case on the merits, investigated, and issued the right-to-sue letter. Although it may be true that the unwillingness of the EEOC to take sterner measures itself indicates that the discriminatory practice alleged was isolated, non-recurring, and focused upon only one individual, and that the agency's resources therefore could better be utilized elsewhere, its action nevertheless precludes the assumption that the case was stale simply because the ninety day period had elapsed.

Here there was more than an absence of prejudice to the defendant attributable to the delay and the apparent willingness of the EEOC to consider the case on the merits even though more than ninety days had elapsed. For, it is alleged that the EOA actively sought to mislead Mrs. Reeb in informing her that adequate funds for her program would no longer be available. It is further alleged that the facts that would alert a reasonable person to the unlawful discrimination only became known to the plaintiff more than six months after the discriminatory act. The plaintiff testified at trial that she did not question the explanation given, because her prior employment with EOA had been terminated for lack of funds, and the same justification proffered to her a second time therefore seemed plausible. In these circumstances we apply the familiar equitable modification to statutes of limitation: the statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. A corollary of this principle, often found in cases where wrongful concealment of facts is

alleged, is that a party responsible for such wrongful concealment is estopped from asserting the statute of limitations as a defense. Mr. Justice Black gave a classic statement of this corollary in Glus v. Brooklyn Eastern District Terminal, 1959, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770: " . . . no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations." 359 U.S. at 232–33, 79 S.Ct. at 762.

From our examination of the regulations promulgated by the EEOC in the Code of Federal Regulations, it appears that the EEOC has not fashioned a formal rule governing the problem in this case. The problem, however, did arise in a case that came before the Commission in 1970. The facts are stated in the abstract of the opinion reported as Decision No. 71–646, Dec. 8, 1970, 3 Fair Emp.Prac.Cases 386 (1972). The holding of the Commission relevant to the present case is reported both there and in 1 CCH Emp.Prac.Guide ¶ 2325.30:

> In the case of an applicant for employment, the Commission deems the date of the violation to include the date charging party knew or had reason to know that he would not be hired, or that he had not been or would not be given consideration.

The employment context in this decision was the sporadic employment of models by a clothing retailer. The Commission decided that reasonable cause existed to believe that the employer violated Title VII in that it refused to hire the charging party, a Negro model, because it appeared that the employer retained no information relating to the model's application for employment, and that no Negro models were hired until the fashion coordinator who failed to act on the charging party's application left the employ of the employer. The charging party had applied for employment in October of 1968. The fashion coordinator

 

who maintained the records of models available for employment left the respondent's employ in February of 1969. The Commission said that the record showed that the charging party first learned that she had been excluded from the list of available models on March 12, 1969, and it therefore held that her complaint filed after that date was timely.

▉▉ The rationale of this decision of the EEOC is correct, and we adopt it here.[5] Secret preferences in hiring and even more subtle means of illegal discrimination, because of their very nature, are unlikely to be readily apparent to the individual discriminated against. Indeed, employers that discriminate undoubtedly often attempt to cloak their policies with a semblance of rationality, and may seek to convey to the victim of their policies an air of neutrality or even sympathy. These tendencies may even extend to the giving of misleading or false information to the victim, as is alleged in the present case.

We hold that the ninety day period did not begin to run in the present case until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff. The district court found only that Mrs. Reeb did not learn of the alleged discrimination until the spring of 1970. It did not make any findings with respect to the allegations that EOA misled the plaintiff or attempted to conceal the alleged discrimination from her, nor did it make findings with respect to when a person similarly situated with a prudent regard for his rights would have discovered the discrimination in the absence of misleading statements or concealment on the part of the defendant.

5. Although we do not regard this individual decision of the EEOC as dispositive, we do regard it as a useful and persuasive guide. *Cf.* Red Lion Broadcasting Co. v. FCC, 1969, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371, 383–84: "The construction of a statute by

We vacate the judgment of the district court dismissing for want of jurisdiction, and remand the case for further proceedings in conformity with the views expressed here.

Vacated and remanded.

those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction."