**Diana GRUBB, Plaintiff,**

v.

**BROADCAST MUSIC, INC., et al., Defendants.**

**No. CV 86–3957.**

United States District Court, E.D. New York.

Oct. 21, 1987.

Brenda E. Johnson, Robert Rivers, P.C., Hempstead, N.Y., for plaintiff.

Brian S. Conneely, Meltzer, Lippe & Goldstein, P.C., Mineola, N.Y., for defendants.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, Circuit Judge
(Sitting by Designation):

In this case involving claims of sex and race discrimination raised by Diana Grubb against her employer, Broadcast Music, Inc. ("BMI") as well as several BMI executives, defendants (hereinafter collectively referred to as "BMI") have moved to dismiss several of her claims and for summary judgment as to the others. Because most of Grubb's claims are not timely raised, and others are insufficient on their face, BMI's motion to dismiss all but two of the claims is granted. Summary judgment is granted as to those two, because no genuine issue of material fact is presented.

## BACKGROUND

Grubb's claims of discrimination center on three incidents. The first occurred in August 1983, when she sought a position as a supervisor in the television and radio section of BMI's licensing department. At that time, Grubb was employed as a supervisor in the file maintenance and new accounts section of that same department. Both positions involved supervision of clerical workers. The position in the TV and radio area went to Sal Marchese, at a lower salary than Grubb was then making.

The second incident of alleged discrimination occurred in February 1984, when Grubb did not receive a position as head of BMI's newly created "national accounts department". That position went instead to Bernard Krivda, whose job was initially titled "national coordinator of master and group accounts". However, by the time the department became operational on or about August 1, 1984, the title mercifully had been shortened to "national accounts manager".

During that time Grubb was on a long-term disability leave, which ended in November 1984 when she returned to work at BMI. In early 1985, she assumed the job of "national accounts coordinator", a newly established, largely clerical position in which she was under Krivda's direct supervision. Upon assuming this position, Grubb requested a salary increase, justified, she said, by the fact that her new job was a "promotion" over the one she had held prior to her disability. BMI's refusal to grant Grubb's request forms the basis for her third allegation of discrimination.

From these events, Grubb alleges numerous claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act of 1963, 29 U.S.C. § 206, the Civil Rights Act of 1866, 42 U.S.C. §§ 1981–1983, and the thirteenth and fourteenth amendments to the Constitution.

### A. *Grubb's Title VII Claims.*

■ BMI urges that each of Grubb's Title VII claims are not timely raised. Grubb is required to have filed a charge with the appropriate state agency and the EEOC within 300 days of the alleged discriminatory act. *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). It is undisputed that Grubb filed her EEOC charge on February 10, 1986. Thus, each of her allegations of Title VII violations— the last of which was the February 1985 denial of a salary increase—relate to incidents that occurred substantially more than 300 days before the EEOC complaint.

Grubb appears to concede that her Title VII claims as to the August 1983 and February 1984 decisions are not timely. She argues only as to the February 1985 refusal to give her a salary increase that the claim is not barred because it was not until July 1985, when Grubb received a 10% "merit" increase, apparently unrelated to her request for a raise tied to her new job, that she "should have been alerted * * * that discrimination was occurring." *Elliott v. Sperry–Rand Corp.*, 79 F.R.D. 580, 585 (D.Minn.1978). That was the point, she argues, when it was evident that her salary as "national accounts coordinator" was— but for the 10% increase—the same as she made in her prior position.

This argument is peculiar. Surely not receiving a promotional raise in February should have alerted Grubb to BMI's position that her new job did not represent a promotion, more so than would the merit

raise in July. If Grubb means to claim that the July raise was itself an act of discrimination, she points to no law that supports the argument. The mere fact that the 10% increase was calculated based upon a salary that was fixed in February and is claimed to be discriminatory does not render the July increase an act of discrimination. It is still the February refusal by BMI to increase her base salary commensurate with what Grubb regarded as a promotion that constitutes the claimed discrimination, and there is no reason why that refusal should not clearly have alerted Grubb to BMI's position. Measured from that date, the February 1986 EEOC charge was not timely. All of Grubb's Title VII claims are therefore dismissed.

### B. Grubb's Section 1983 and Fourteenth Amendment Claims.

■ As a private employer, BMI is not subject to liability under § 1983 or the fourteenth amendment, and Grubb does not contest the issue in her reply papers to defendant's motion. The claims are therefore dismissed.

### C. Grubb's Section 1981 Claims.

■ Grubb brings claims of race and sex discrimination under 42 U.S.C. § 1981, and the thirteenth amendment. Since no direct action is authorized by the thirteenth amendment, *see Alma Society, Inc. v. Mellon*, 601 F.2d 1225, 1237 (2d Cir.), *cert. denied*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979), and since neither § 1981 nor the thirteenth amendment apply to sex discrimination, *Rice v. New England College*, 676 F.2d 9 (1st Cir.1981), these claims boil down to a claim of race discrimination under § 1981.

Grubb's claims that she has been discriminated against on the basis of her race in violation of § 1981 center on the August 1983 decision to give Marchese the position in the radio and television area of the licensing department, and the decision 18 months later to make Krivda and not Grubb the head of the national accounts department.

■ As to the promotion of Marchese over Grubb, the claim is not timely even under the three year statute of limitations applicable to § 1981. This is the appropriate period under the accepted rule in the second circuit for § 1981 claims, *Keyse v. California Texas Oil Corp.*, 590 F.2d 45 (2d Cir.1978) (applicable statute of limitations under § 1981 is three years, borrowed from N.Y. CPLR § 214(2)), and remains so even in light of the Supreme Court's decision in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 2620–21, 96 L.Ed.2d 572 (1987) (extending rule of *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), requiring borrowing of "most analogous" state statute of limitations, to § 1981). *See Okure v. Owens*, 816 F.2d 45, 47 (2d Cir.1987) (even after *Wilson*, appropriate statute of limitations for constitutional claims under § 1983 is three years, pursuant to N.Y. CPLR § 214(5), New York's general personal injury statute). Even if CPLR § 214(2) did not apply to § 1981 claims, CPLR § 214(5) would, and the period under both sections is three years. The instant suit was filed in November 1986, more than three years after Marchese assumed his duties in August 1983.

Grubb contends, however, that she was "reasonably unaware" in August 1983 that the hiring of Marchese was an act of discrimination against her, and that it was not until February 1984, when Krivda was chosen to head the national accounts department, that Grubb could "reasonably be said to be aware of the discrimination."

■ Grubb was aware, however, in August 1983 of all of the essential facts that constituted discrimination, if it existed. Marchese, a white male, was chosen for a job that Grubb, a black female, apparently sought. Unlike *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975), cited by plaintiff, Grubb knew the position at issue had been filled, and by whom. In *Reeb*, the defendant "actively sought to mislead [the plaintiff]" by leading her to believe that the position from which she was fired had not been filled at all, when in fact it had been, in an allegedly

discriminatory way. 516 F.2d at 930. Moreover, even if a subsequent discriminatory act might in some circumstances provide facts without which a plaintiff would be unaware of the discriminatory character of an earlier act, here, the subsequent hiring of Krivda was not itself a violation of § 1981, as we now proceed to discuss.

■ As to the February 1984 decision to make Krivda the national accounts manager, the claim is timely and at least states a claim for relief. However, on BMI's motion for summary judgment, Grubb is able to articulate no genuine issue of material fact to contradict BMI's contentions that Krivda was substantially more qualified than Grubb for the position, and that, in any event, Grubb did not apply for the position when it was available.

It is clear and uncontradicted that Krivda was eminently qualified to head the national accounts department. He had had responsibility for such accounts as acting regional manager for BMI's nine-state west coast area. In that capacity, as to which Grubb had no comparable experience, Krivda generated considerable revenues for BMI and solicited new accounts, both of which he was expected to continue to do in the new position.

In addition, Krivda possessed a college degree and had significant managerial experience, both of which Grubb lacked. While Grubb had been employed by BMI four years longer than Krivda, that was the sole factor on which he was not significantly more qualified for the managerial position that Grubb claims should have gone to her.

More fundamentally, Grubb never applied for nor expressed an interest in the job. While this is understandable since she was on long-term disability leave when the department was created and when Krivda assumed his duties, it is nevertheless the case that Grubb never applied for, and hence never was denied, an available job. *See Murphy v. Middletown Enlarged City School District,* 525 F.Supp. 678, 689–90 (S.D.N.Y.1981). When Grubb again became available to work, Krivda had already been chosen for, and was functioning in, the position. *See also Chavez v. Tempe Union High School District No. 213,* 565 F.2d 1087, 1091 n. 4 (9th Cir.1977) ("[T]he Act demands only that minorities be given the same consideration for available positions as non-minorities * * *. Accordingly, where there is a charge of overt discrimination, a showing of a job vacancy is essential in order to establish a prima facie case."). Since Grubb was patently less qualified than Krivda, and in fact never competed against him to head the national accounts department, BMI's motion for summary judgment on this claim is granted.

### D. *Grubb's Equal Pay Act Claim.*

■ Grubb's final claim is that the salary she receives as "national accounts coordinator" is less than that received by Krivda as "national coordinator of master and group accounts", the original title given to Krivda's job in charge of the national accounts department. The facial similarity—but not identity—between the job titles does not mean, however, that the difference in the salaries constitutes a violation of the Equal Pay Act, which bars unequal pay for "equal work on jobs the performance of which requires equal skill, effort and responsibility". 29 U.S.C. § 206(d)(1).

It is undisputed that Grubb's job calls for her to work under Krivda's supervision, and that the job was created specifically for Grubb upon her return from her disability leave. Even when Krivda's job title included the term "coordinator"—the apparent basis for Grubb's claim that that job was similar to the one she now holds—it was in reality the same position he now holds, which, far from being identical to Grubb's, involves *supervising* her. Indeed, the tenuousness of Grubb's Equal Pay Act claim is emphasized by the fact that Krivda was called the "national coordinator" only before the new department became operational in August 1984. By the time he assumed his duties, the title had been changed to its present form, "national accounts manager". There is simply no evidence that Krivda—or anyone else—ever performed substantially similar work to Grubb, much less that he received more

money for doing so. Defendant's motion for summary judgment as to Grubb's Equal Pay Act claim is granted.

## CONCLUSION

Plaintiff's complaint is dismissed in its entirety. The clerk is directed to enter judgment accordingly.

SO ORDERED.