[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14206

Non-Argument Calendar

_____

ROOBINA ZADOORIAN,

Plaintiff-Appellant,

*versus*

GWINNETT TECHNICAL COLLEGE,
KIMBERLY STRONG,
Director of Sonography Program,
JIM SASS,
Dean of Health Imaging & Informatics,
REBECCA ALEXANDER,
VP of Academic Affairs,
DEREK DABROWIAK,
Executive Director, Student Affairs - TCSG, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-00922-LMM

_____

Before BRASHER, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Roobina Zadoorian appeals the district court's order dismissing her Title VI discrimination lawsuit against Gwinnett Technical College ("GTC"), the Technical College System of Georgia ("TCSG"), and a number of school administrators and staff (collectively with GTC and TCSG, the "State Defendants"). She also appeals the district court's dismissal of her Administrative Procedures Act ("APA") claim against the U.S. Department of Education's Office of Civil Rights ("OCR").

She argues that the district court erroneously dismissed her Title VI claims of intentional discrimination and retaliation against the State Defendants as time-barred because it incorrectly: (1) determined that her limitations period began before she alleges that she was aware of a similarly situated comparator; (2) failed to toll the limitations period due to State Defendants' fraud; and (3) relied on Georgia's two-year limitations period for personal injury claims, rather than the six-year period for contract claims.

Next, she argues that the district court erroneously dismissed her APA claim against OCR due to sovereign immunity because: (1) she had no adequate alternative remedy beyond an APA suit, because her OCR complaint related to disparate impact and not intentional discrimination; and (2) OCR failed to properly investigate her complaint pursuant to its own regulations.

We write only for the parties who are already familiar with the facts. Accordingly, we include only such facts as are necessary to understand our opinion.

## I. DISCUSSION

*A. With respect to the State Defendants, did the district court err in its application of the statute of limitations?*

"[W]e review *de novo* the district court's interpretation and application of the statute of limitations." *United States v. Frediani*, 790 F.3d 1196, 1199 (11th Cir. 2015) (quotation marks omitted). "A finding that equitable modification does not apply is subject to *de novo* review; however, this [C]ourt is bound by the district court's factual findings unless they are clearly erroneous." *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1024 (11th Cir. 1994). Plaintiffs may "plead [themselves] out of court" by alleging facts inconsistent with the timeliness of their complaint. *See Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (*en banc*).

Issues not raised in an initial brief are forfeited and generally deemed abandoned. *United States v. Campbell*, 26 F.4th 860, 871-72 (11th Cir. 2022) (*en banc*), *petition for cert. denied*, 143 S. Ct. 95 (2022). "[F]orfeiture is the failure to make the timely assertion of a right;

waiver is the intentional relinquishment or abandonment of a known right." *Id.* at 872 (quotation marks omitted). "Waiver directly implicates the power of the parties to control the course of the litigation; if a party affirmatively and intentionally relinquishes an issue, then courts must respect that decision." *Id.*

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Claims under Title VI are appropriately subjected to constitutional analysis. *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 286-87 (1978); *accord Grutter v. Bollinger*, 539 U.S. 306, 343 (2003). Further, standards that govern claims under Title VII are instructive in Title VI cases. *Ga. State Conf. of Branches of NAACP v. State of Ga.*, 775 F.2d 1403, 1417 (11th Cir. 1985).

"Title VI itself directly reaches only instances of intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (quotation marks omitted, alterations adopted). "A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008).

We have consistently applied iterations of the *McDonnell Douglas* burden-shifting framework to evaluate claims of intentional discrimination and retaliation that rely on circumstantial evidence and done so even when such claims arise in contexts other than employment. *See Johnson v. Miami-Dade*, 948 F.3d 1318, 1325

(11th Cir. 2020) (applying the framework to Title VII claims of unlawful employment discrimination and retaliation); *see also Alvarez v. Royal Atl. Devs.*, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010) (relying on the framework for a Title VII discrimination claim based on circumstantial evidence); *Branches of NAACP*, 775 F.2d at 1417 (applying the framework to a Title VI disparate impact claim raised in an educational context).

"[A] Title VII plaintiff proceeding under *McDonnell Douglas* must prove, as a preliminary matter, not only that she is a member of a protected class, that she suffered an adverse . . . action, and that she was qualified for the [benefit] in question, but also that she was treated less favorably than similarly situated individuals outside her class." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1224 (11th Cir. 2019) (*en banc*) (quotation marks omitted).

"To establish a prima facie case of retaliation, a plaintiff must show: (1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse . . . action; and (3) that there is some causal relationship between the two events." *Johnson*, 948 F.3d at 1325 (quotation marks omitted) (employment context).

Although the *McDonnell Douglas* framework is regularly employed in discrimination cases, we have also explained that, to survive a motion to dismiss, a complaint alleging discrimination "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quotation marks omitted) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). "This is because

*McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Id.*

Under this Circuit's prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc.*" *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). To constitute "overruling" under this rule, the intervening "Supreme Court decision must be clearly on point" and "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quotation marks omitted).

In *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, the Supreme Court noted that Title VI's "legislative history clearly shows that Congress intended Title VI to be a typical 'contractual' spending power provision." 463 U.S. 582, 599 (1983). Thus, the Court reasoned "that compensatory relief, or other relief based on past violations of the conditions attached to the use of federal funds, is not available as a private remedy for Title VI violations not involving intentional discrimination." *Id.* at 602-03.

In *Barnes v. Gorman*, the Supreme Court "applied [a] contract-law analogy . . . [to] defin[e] the scope of conduct for which [federal] funding recipients may be held liable for money damages." 536 U.S. 181. 186-89 (2002). Because "punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract," the Court held that "punitive

damages may not be awarded in private suits brought under Title VI." *Id.* at 187-89.

We have held that Georgia's two-year statute of limitations for personal injury claims applies to claims under Title VI. *Rozar v. Mullis*, 85 F.3d 556, 560-61 (11th Cir. 1996) (citing O.C.G.A. § 9-3-33). We reasoned that claims under 42 U.S.C. §§ 1983 and 1981 are subject to states' personal injury limitations periods, and thus, "[c]haracterizing section 2000d claims as personal injury actions for limitations purposes promotes a consistent and uniform framework by which suitable statutes of limitations can be determined for civil rights claims, and serves Congress' objectives by avoiding uncertainty and creating an effective remedy for the enforcement of federal civil rights." *Id.* at 561 (quotation marks omitted, alterations adopted). By contrast, "[w]ritten contract claims have a six-year statute of limitations under Georgia law." *Anthony v. Am. Gen. Fin. Servs.*, 626 F.3d 1318, 1322 (11th Cir. 2010) (citing O.C.G.A. § 9-3-24).

The Georgia Supreme Court issued emergency orders in the wake of COVID-19 which tolled limitations periods for all civil claims during a 122-day period between March 14, 2020, and July 14, 2020. Ga. Sup. Ct. Orders of March 14, 2020, and June 12, 2020.[1]

---

[1] *See Court Information Regarding The Coronavirus*, SUPREME COURT OF GEORGIA, https://www.gasupreme.us/court-information/court_corona_info (last visited March 1, 2024).

Equitable modification generally applies when a plaintiff alleges that a defendant was actively misleading as to the reasoning behind the adverse action taken against the plaintiff. *See Villarreal*, 839 F.3d at 972. Where a plaintiff does not allege that the defendant was actively misleading, "[t]he general test for equitable tolling" applies, which "requires the party seeking tolling to prove (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 971-72 (quotation marks omitted); *see also Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559, 1561 (11th Cir. 1987) ("Equitable tolling is a type of equitable modification, which often focuses on the plaintiff's excusable ignorance of the limitations period and on the lack of prejudice to the defendant." (quotation marks omitted, alteration adopted)).

"Under equitable modification, a limitations period does not start to run until the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Sturniolo*, 15 F.3d at 1025 (citing *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975)); *accord Rozar*, 85 F.3d at 561-62; *Villarreal*, 839 F.3d at 971-72. "Plaintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury." *Rozar*, 85 F.3d at 562. In practice, "[t]his rule requires a court first to identify the alleged injuries, and then to determine when plaintiffs could have sued for them." *Id.*

"It is not necessary for a plaintiff to know all the facts that support [her] claim in order to file a claim." *Sturniolo*, 15 F.3d at 1025. For example, a plaintiff in an age-based employment discrimination case "who is aware that he is being replaced in a position he believes he is able to handle by a person outside the protected age group knows enough to support filing a claim." *Id.* (alterations adopted).

"A corollary of [equitable modification], often found in cases where wrongful concealment of facts is alleged, is that a party responsible for such wrongful concealment is estopped from asserting the statute of limitations as a defense." *Reeb*, 516 F.2d at 930. This principle is evident in the Georgia statutes, which tolls the initiation of limitations periods until the plaintiff discovers a defendant's fraud in cases where such fraud deterred the plaintiff from bringing an action. O.C.G.A. § 9-3-96.

In *Sturniolo*, we reversed and remanded a district court's order granting summary judgment in favor of the defendants on the basis that Sturniolo's age-based employment discrimination claim was time-barred. 15 F.3d at 1024, 1026. We reasoned that it was improper for the district court to initiate the limitations period on the date of Sturniolo's firing because, at the time, Sturniolo believed that his employer had legitimate, business-related reasons for firing him, and he did not learn that his employer had replaced him with a younger individual "until several months after his discharge." *Id.* at 1025-26. We explained that "[t]he date when Sturniolo knew or should have known that [his employer] had hired a

younger individual to replace him is the date upon which the tolling period should commence." *Id.* at 1026.

In *Reeb*, our predecessor circuit reversed and remanded a district court's order dismissing Reeb's employment discrimination claim for lack of jurisdiction on the basis that her complaint before the Equal Employment Opportunity Commission was untimely.[2] 516 F.2d at 925, 931. The Court highlighted that Reeb alleged that her employer actively sought to mislead her as to its reasons for firing her and that she believed her employer's proffered reasoning for some six months. *Id.* at 930. When Reeb learned that she had been replaced by an allegedly less qualified male, "she immediately filed charges" that very same week. *Id.* at 926. The Court vacated and remanded the district court's judgment, noting that the district court "did not make any findings with respect to the allegations that [Reeb's employer] misled [her] or attempted to conceal the alleged discrimination . . . , nor did it make findings with respect to when a person similarly situated with a prudent regard for his rights would have discovered the discrimination in the absence of misleading statements or concealment" by the employer. *Id.* at 931.

As an initial matter, we address only Zadoorian's intentional discrimination and retaliation claims raised in Counts 1 and 4 of her

---

[2] Here, unlike *Reeb*, Plaintiffs need not exhaust administrative remedies prior to filing suits under Title VI. *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1200 n.30 (11th Cir. 1991).

complaint before the district court, as she expressly waived any challenge to her Title VI claims alleged in Counts 2, 3, and 5.

Here, the district court did not err in finding that Zadoorian's claims of intentional discrimination and retaliation under Title VI were time-barred. First, the district court appropriately applied Georgia's two-year personal injury limitations period to Zadoorian's Title VI claims, pursuant to this Court's holding in *Rozar*. 85 F.3d at 560-61; O.C.G.A. § 9-3-33. *Rozar* remains good law because both *Barnes* and *Guardians* related to what remedies are available to Title VI plaintiffs and did not address what statute of limitations applies to such claims. *Barnes*, 536 U.S. at 186-89; *Guardians*, 463 U.S. at 599, 602-03. Thus, neither case constitutes an intervening Supreme Court decision that is clearly on point or directly in conflict with *Rozar* such that this Court may decline to apply that case. *Archer*, 531 F.3d at 1352; *Kaley*, 579 F.3d at 1255.

Second, the district court did not err in determining that the limitations period for Zadoorian's Title VI claims began running by July 11, 2017, because Zadoorian had reason to believe that GTC had subjected her to intentional discrimination and retaliation by this date. This determination is supported by Zadoorian's July 12, 2017, email to TCSG's executive director, Dabrowiak. In that message, the following statements by Zadoorian show that she had the requisite knowledge to initiate the limitations period by that time: (1) that she had been discriminated against in the Program's admissions process; (2) that the process had been subject to "manipulation" by Director Strong in order to aid "white Americans;" and (3) that her interaction with Dean Sass "show[ed] his hostile *intention* and discrimination towards [her]." Further, Zadoorian had

received the final selection criteria—that she alleges was altered after applications had been submitted in order to intentionally discriminate against her—approximately one month before she sent her email to Dabrowiak.

Therefore, because she knew of her alleged injury and who caused it, she could have sued for intentional discrimination based on these facts, and the district court did not err in determining that the limitations period for Zadoorian's intentional discrimination claim began running when she had her interaction with Dean Sass on July 11, 2017. *See Rozar*, 85 F.3d at 562.[3]

Similarly, the district court did not err in determining that the limitations period for Zadoorian's retaliation claim had begun running by this same date. Sass's allegedly retaliatory conduct took place on July 11, 2017, when he explicitly linked his demand for Zadoorian to leave the college to her complaint.[4] The very next day, she labeled this interaction as "[r]etaliation" in a complaint filed with OCR. Because she was aware that Sass had caused her alleged injury of retaliation immediately after the interaction occurred, she

---

[3] Thus, the district court properly held that Zadoorian's limitations period expired on July 11, 2019, more than two and one-half years before she filed suit on March 4, 2022. The limitations period also expired before the Georgia Supreme Court issued its emergency order tolling the 122 days between March 14, 2020, and July 14, 2020.

[4] Although it not clear whether Sass was aware that Zadoorian had complained of discrimination to GTC staff or to OCR, Zadoorian told Sass on June 14, 20217, that she had a complaint and set up an appointment with Sass for the next day to talk about it.

could have sued on July 11, 2017, and thus, the district court did not err in determining that her limitations period began running by this date. *Rozar*, 85 F.3d at 562.

There is no merit in Zadoorian's argument that the limitations period did not begin running until November 19, 2019 (when she asserts she first learned of a similarly situated comparator). First, as to her retaliation claim, a plaintiff need not identify a comparator to demonstrate a *prima facie* case of retaliation. *See Johnson*, 948 F.3d at 1325. Thus—even accepting as true Zadoorian's erroneous assertion that a limitations period does not initiate until the plaintiff is aware of all facts necessary to establish a *prima facie* claim—the date she performed her calculations and became aware of a comparator would not be dispositive of the initiation of the limitations period for her retaliation claim.

Next, as to Zadoorian's claim of intentional discrimination, it was not necessary for Zadoorian to be able to identify a discrete comparator to initiate this claim's limitations period. A complaint alleging discrimination "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case" in order to survive the motion to dismiss stage. *Surtain*, 789 F.3d at 1246; s*ee also Sturniolo*, 15 F.3d at 1025 ("It is not necessary for a plaintiff to know all the facts that support his claim in order to file a claim."). In evaluating when a limitations period began to run, courts look to whether a plaintiff could have sued for the alleged injury. *Rozar*, 85 F.3d at 562. As described above, the allegations from Zadoorian's July 12, 2017, email to Dabrowiak, as well as the portion of her OCR complaint

labeled "[r]etaliation," "plausibly suggest that [Zadoorian] suffered an adverse . . . action due to intentional . . . discrimination," and thus, she could have sued for intentional discrimination immediately after her July 11, 2017, interaction with Sass such that her limitations period began running on this date. *Surtain*, 789 F.3d at 1246.

Even if identification of a comparator were necessary to initiate the limitations period—i.e. even if the comparator information from OCR's September 30, 2019, letter were necessary for Zadoorian to learn of the requisite facts to initiate the limitations period[5] —her filings before the district court concede that she received this letter on October 4, 2019. Zadoorian fails to explain why "a person with a reasonably prudent regard for his rights" could not have performed the necessary calculations that same month. *See Sturniolo*, 15 F.3d at 1025. Thus, even if the information from OCR's September 30, 2019, letter were necessary for Zadoorian to learn of a comparator, and thus, to file a lawsuit, the limitations period would have initiated on October 4, 2019, when

---

[5] Zadoorian does not clearly explain why the OCR's letter dated September 30, 2019, was necessary for her to identify a similarly situated comparator. Zadoorian already had access to the final selection criteria and believed that the criteria had been manipulated so that less-qualified applicants outside of her protected group could be admitted to the program instead of her. Thus, even if awareness of a comparator were necessary to initiate the limitations period, Zadoorian likely could had identified the comparator as "the lowest-scoring applicant outside of her protected group" after she received the final selection criteria and could have provided additional detail as necessary following discovery.

she received the letter and when a reasonably prudent person concerned for their rights would have performed the necessary calculations. *See id.*; *accord Rozar*, 85 F.3d at 561-62. Even accounting for the 122-day pause in limitations periods pursuant to emergency orders from Georgia Supreme Court, Zadoorian had until February 2, 2022, such that her March 4, 2022, complaint was not timely. Ga. Sup. Ct. Orders of March 14, 2020, and June 12, 2020; *Rozar*, 85 F.3d at 560-61; O.C.G.A. § 9-3-33.

Zadoorian's reliance on *Sturniolo* is misplaced. For the reasons stated *supra*, it was not necessary for Zadoorian to be aware of a specific comparator in order for the limitations period to begin running. *Surtain*, 789 F.3d at 1246. In any event, in *Sturniolo*, this Court explained that a plaintiff in an age-based employment discrimination case "who is aware that he is being replaced in a position he believes he is able to handle by a person outside the protected age group knows" the necessary facts to initiate the limitations period. 15 F.3d at 1025 (alterations adopted). Here, Zadoorian's June 19, 2017, email to Alexander, and July 12, 2017, email to Dabrowiak, demonstrate that Zadoorian was aware of facts that would support her claims following her July 11, 2017, interaction with Sass. For example, just days after she was rejected from the Program, Zadoorian emailed Alexander stating that she was rejected, despite her higher qualifications, so that less-qualified applicants outside of her protected group would be admitted. Zadoorian's case is therefore unlike *Sturniolo*, where the plaintiff initially believed that he was fired for a legitimate reason and only learned several months after his firing that he was replaced by

someone outside of his protected group. 15 F.3d at 1025-26. Thus, *Sturniolo* supports the district court's determination that the limitations period for Zadoorian's Title VI claims began to run by July 11, 2017.

Finally, Zadoorian's assertion that the district court erroneously failed to consider if her claims should be subject to the principle of equitable modification fails. The district court *did* apply this principle when it determined that—despite her assertions that she was blocked from accessing necessary information—Zadoorian's limitations period nevertheless began running by July 11, 2017, when a person with a reasonably prudent regard for his rights would have become aware of the facts necessary to support the claims. *Sturniolo*, 15 F.3d at 1025. In other words, even if there were fraud, it didn't prevent Zadoorian from becoming aware of the facts necessary to support her claims. For fraudulent concealment to toll the statute of limitations, a plaintiff must show "successful concealment of the cause of action." *Fedance v. Harris*, 1 F.4th 1278, 1287 (11th Cir. 2021).

Zadoorian points to *Reeb* in support of her contentions that: (1) the State Defendants should be estopped from asserting the statute of limitations; or (2) that her case should be remanded for lack of sufficient findings by the district court. Such reliance is misplaced. Here, unlike *Reeb*, the district court addressed: (1) Zadoorian's assertions that the State Defendants misled her in order to conceal their discriminatory intent; and (2) when Zadoorian became aware of the facts supporting her claim such that her

limitations period began running. *Reeb*, 516 F.2d at 925-26, 930-31. The district court ultimately determined that the State Defendants did not conceal their alleged discrimination because Zadoorian became aware of the facts to support her claim on July 11, 2017. Accordingly, her argument that her case requires remand to address the issue of the State Defendants' alleged fraud fails.

Accordingly, we affirm as to this issue.

*B. With respect to the APA claim against OCR, did the district court err in dismissing Zadoorian's claim for lack of jurisdiction because of sovereign immunity?*

"We review *de novo* a district court's dismissal of a complaint for sovereign immunity." *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Florida*, 692 F.3d 1200, 1203 (11th Cir. 2012) (quotation marks omitted). The federal government and its agencies are entitled to sovereign immunity from civil lawsuits, except to the extent it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The plaintiff has the burden of showing an unequivocal waiver of sovereign immunity as to the specific claims that he seeks to bring against the government. *Id.* Further, we may affirm on any ground supported by the record. *Wright v. City of St. Petersburg, Fla.*, 833 F.3d 1291, 1294 (11th Cir. 2016).

Chapter 5 of the APA contains a waiver of the immunity for claims that allows for judicial review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" but limits the waiver to claims "seeking relief other than money damages."

5 U.S.C. § 702. The APA expressly provides, however, that this waiver does not "affect[] other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground" or "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*

Significant for this appeal, judicial review under the APA is available only for an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Where there is no private right of action otherwise, parties can seek review under either a "specific authorization in the substantive statute" or under the general review provisions of the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *see also Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006) (noting that, because the statute at issue did not provide for a private right of action, any challenge to agency action must be brought under the APA).

In *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979), the Supreme Court stated that "lawsuits to end discrimination [] would be the preferable and more effective remedy" for discrimination in federally funded programs than placing on individual plaintiffs "the burden of demonstrating that an institution's practices are so pervasively discriminatory that a complete cut-off of federal funding is appropriate." 441 U.S. at 688-89, 704-06 & n.38 (holding that a plaintiff could raise a claim of discrimination directly against a medical school).

In *Guardians*, the Supreme Court held "that compensatory relief, or other relief based on past violations of the conditions attached to the use of federal funds, is not available as a private remedy for Title VI violations not involving intentional discrimination." 463 U.S. at 602-03. In *Alexander v. Sandoval*, the Supreme Court held that Title VI prohibits intentional discrimination only, and thus, there is no private right of action to enforce disparate impact claims under Title VI. 532 U.S. at 281, 285-86.

The district court properly held that Zadoorian's claim against OCR was barred by sovereign immunity because her claim against the State Defendants is an adequate alternative remedy. Zadoorian argues on appeal that her administrative claim against OCR was for disparate impact, not intentional discrimination. And because there is no private cause of action for disparate impact under Title VI, she argues that there was no alternative remedy and therefor, there was no sovereign immunity bar to her claim against OCR. We disagree; the district court correctly read Zadoorian's OCR complaint as one for intentional discrimination—not one for disparate impact. Thus, the district court properly held that her claim against the State Defendants was an adequate alternative remedy and properly dismissed Zadoorian's APA claim against the OCR due to sovereign immunity. Although Zadoorian's administrative complaint to the OCR alleged that the Program's admission criteria benefited "white Americans" to the detriment of non-native English speakers, her OCR complaint averred that this effect was intentional, rather than the unintended consequence of otherwise neutral admissions criteria. For example, Zadoorian

contended that GTC "manipulated the data" and implied that her rejection and ranking as the highest-scoring non-alternate was "intentional." Further, although Zadoorian's OCR complaint requested a mandate that GTC "try to fix the problem and correct the selection process" as relief, she tied this remedy to her personal rejection and even requested OCR "to send the wrongly selected students home" so that she could study in the program.

Additionally, OCR made clear in its January 9, 2018, letter that it would only investigate Zadoorian's claim of "different treatment," and Zadoorian replied with her consent signature. It is true that Zadoorian sent a follow-up email to OCR highlighting the disparate impact of—what was purportedly intentionally discriminatory—selection criteria. However, she made this assertion in furtherance of her own claim of intentional discrimination, alleging that Strong intentionally designed the discriminatory criteria to benefit "her favorite white American students[]," and explicitly raising the disparate impact of the criteria "[i]n defending [her] case against [State Defendants'] claim" that they did not intentionally discriminate because the same scoring criteria was used for all applicants.

As further evidence that Zadoorian's complaint before the OCR related to intentional discrimination, the APA claim that she raised before the district court alleged that OCR ignored the assertions from her OCR complaint that: (1) Strong changed the admissions criteria after applications had been submitted; (2) her

evidence constituted "proof of [GTC's] *intention*"; and (3) GTC "never *intended* to get the higher qualified students in their program."

Contrary to Zadoorian's assertion, the OCR's September 30, 2019, letter to her did not suggest that her OCR complaint had asserted a disparate impact claim. Rather, it expressly stated that OCR had interpreted her complaint as one for disparate treatment, **Doc. 35-3 at 1**, and it expressly found insufficient evidence to sustain such a claim. "Based on the preponderance of evidence, OCR has determined that there is insufficient evidence to support a finding that the Complainant was subjected to different treatment on the basis of national origin as alleged in this complaint." *Id.* **at 5.** Also, OCR's explicit recognition that her complaint "alleged that the College subjected [her] to different treatment on the basis of national origin in its Sonography Program," as well as OCR's earlier indication that it would only investigate a claim of intentional discrimination, undercuts any argument that the OCR understood her complaint as—or that the complaint, in fact, was—related to disparate impact.

Therefore, because Zadoorian's OCR complaint related to intentional discrimination, she had an adequate alternative remedy in the form of a private suit against GTC. *Guardians*, 463 U.S. at 602-03. This precluded Zadoorian from filing a claim under the APA due to sovereign immunity. 5 U.S.C. § 704; *Cannon*, 441 U.S. at 704-06 & n. 38. Thus, this Court need not reach Zadoorian's additional arguments as to the merits of her jurisdictionally

barred-APA claim.  *See Wright*, 833 F.3d at 1294.  Accordingly, we affirm.

**AFFIRMED.**