[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10315

_____

D.C. Docket No. 8:13-cv-02784-EAK-AEP

BRUCE WRIGHT,

Plaintiff-Appellant,

versus

CITY OF ST. PETERSBURG, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 15, 2016)

Before ED CARNES, Chief Judge, JILL PRYOR, Circuit Judge, and REEVES,[*]
District Judge.

---

[*] Honorable Danny C. Reeves, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

ED CARNES, Chief Judge:

Bruce Wright obstructed a police investigation and resisted arrest in a city park in St. Petersburg, Florida. He was arrested for that unlawful conduct and the arresting officer issued him a "trespass warning" under City Ordinance § 20-30, which prohibited him from re-entering the park for one year. Wright contends that § 20-30 violates the First Amendment because it prevented him from re-entering the park to exercise his First Amendment rights. Wright is wrong. The unlawful behavior that led to his arrest and trespass warning was not protected expression. The City's exclusion of him from the park for one year was lawful even though it had an incidental effect on his First Amendment rights during that year.

## I.

Wright is an ordained minister, co-director of an addiction recovery program, and advocate for the poor and homeless.[1] As part of his work he hands out flyers and offers counseling to people who might benefit from his recovery program. Of the City's 142 parks, Wright prefers to use Williams Park in

---

[1] Wright appeals from the district court's grant of summary judgment to the City, so we view "the evidence and all factual inferences . . . in the light most favorable" to him. Gerling Glob. Reinsurance Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233–34 (11th Cir. 2001). He contends that the district court erred in relying on disputed material facts to reach its legal conclusions, but that contention is beside the point since we review the grant of summary judgment de novo, CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1268 (11th Cir. 2006), and determine for ourselves whether the evidence viewed favorably to him precludes the entry of summary judgment.

downtown St. Petersburg for his ministerial outreach and advocacy work because many poor and homeless people visit it.  He also organizes and attends demonstrations, ranging from "sleep-outs" for the homeless to human rights marches, which have been held in Williams Park and other public areas in the city (such as streets and sidewalks).  There is no question that the First Amendment protects Wright's ministerial outreach and political speech.  See Snyder v. Phelps, 562 U.S. 443, 451–53, 131 S. Ct. 1207, 1215–16 (2011); Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S. Ct. 2559, 2563 (1981).

On March 27, 2013, Officers Steven Laurenzi and Richard Targaszewski were patrolling Williams Park when they encountered Wright.  They were speaking to a man who had an outstanding arrest warrant when Wright approached them from behind, told the officers to stop harassing the man, and asked what the man had done wrong.  Laurenzi cautioned Wright not to interfere, told him several times to step back, and warned him that he would be arrested for obstructing an investigation if he did not back off.  When Wright refused to back off and stop, Laurenzi arrested him.  Targaszewski had to help Laurenzi handcuff Wright because he braced and tensed his arms.  Wright was arrested for two counts of resisting an officer without violence or obstruction.  He later pleaded guilty to that offense, and the trial court withheld adjudication.

When Laurenzi arrested Wright he also issued him a "trespass warning" for Williams Park under City Ordinance § 20-30.  That ordinance authorizes police officers, in their discretion, to issue trespass warnings "to any individual who violates any City ordinance or State law which was committed while on or within a City facility, building, or outdoor area, including municipal parks."  St. Petersburg, Fla. Code § 20-30(b).  The ordinance does not apply to sidewalks.  Id. § 20-30(b)–(c).  The written warnings ban the offender from re-entering the particular piece of property where he was arrested for a specified period of time, id. § 20-30(b)–(e), and if he does re-enter that property during that period of time, he can be arrested for trespass, id. § 20-30(f).  The ordinance provides a process for offenders to appeal the warnings they receive to an independent hearing master, and then, if necessary, to seek review in the county circuit court (which has jurisdiction over appeals from "final administrative orders of local government code enforcement boards").  See id. § 20-30(i); see also Fla. Stat. § 26.012(1).[2]  Regardless of any appeal, § 20-30(g) empowers the City official who controls the property to "authorize an individual who has received a trespass warning to enter the property or premises to exercise his or her First Amendment rights if there is no other

_____

[2] The County Court of the Sixth Judicial Circuit in and for Pinellas County recently declared that § 20-30(i) and a portion of § 20-30(e) are void ab initio because their enactment violated provisions of Florida's Government in the Sunshine Law allowing for notice to the public and public comment.  Both parties agree that the court's decision does not impact this case.

4

reasonable alternative location to exercise such rights or to conduct necessary municipal business."

Wright's trespass warning under Ordinance § 20-30 prohibited him from re-entering Williams Park for one year.   The prohibition made his ministerial outreach more difficult because he could no longer interact with people inside the park.  The trespass warning also prevented him from attending a press conference on police brutality held inside the park the day after his arrest.  Wright appealed his warning according to the procedures in the ordinance, and the hearing master denied his appeal, concluding that the warning had been lawfully issued.  He appealed that denial to a three-judge panel of the Sixth Judicial Circuit Court in and for Pinellas County, which upheld that decision.

On April 19, 2013, Wright applied to the City for a suspension of his trespass warning under § 20-30(g) for the entire day of May 1, 2013 so that he could participate in a workers' rights rally.  The City granted his request and allowed him to enter the park from 12:00 p.m. to 11:00 p.m. "to lawfully exercise his First Amendment rights."  Wright did so, but he did not enter the park any other day while his trespass warning was in effect or apply for another suspension.

In October 2013 Wright filed a complaint against the City under 42 U.S.C. § 1983, alleging that Ordinance § 20-30 violates the First and Fourteenth Amendments facially and as applied to him.  The district court granted the City's

5

motion for summary judgment, concluding that § 20-30 is a reasonable regulation of the time, place, and manner of speech in the park.  Wright appeals that judgment.

## II.    Discussion

We review de novo the grant of summary judgment to the City.  CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1268 (11th Cir. 2006).  We also review de novo the constitutionality of ordinances.  Café Erotica of Fla., Inc. v. St. Johns Cty., 360 F.3d 1274, 1282 (11th Cir. 2004).  We can "affirm for any reason supported by the record," even if the district court did not rely on that reason.  United States v. Chitwood, 676 F.3d 971, 975 (11th Cir. 2012).

Wright raises three challenges.  First, he contends that Ordinance § 20-30 as a whole violates the First Amendment on its face and as applied to him because it allows the City to exclude people from traditional public fora, including people who wish to engage in protected expression.  Second, he contends that § 20-30(g), which gives a City official discretion to grant suspensions of a ban violates the First Amendment because it amounts to a prior restraint on speech in a traditional public forum.  Third, he contends that § 20-30(g) is unconstitutionally vague under the Fourteenth Amendment's Due Process Clause.

### A.    First Amendment Challenge to Ordinance § 20-30

6

To succeed on his facial challenge, Wright must show that Ordinance § 20-30 is "unconstitutional in all of its applications." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190 (2008). There is an exception to that rule for facial challenges based on the overbreadth doctrine if the plaintiff can show that a "substantial number of [the statute's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." Id. at 449 n.6, 128 S. Ct. at 1190 n.6 (quotation marks omitted). We have already held that § 20-30 is not facially unconstitutional under the overbreadth doctrine, Catron v. City of St. Petersburg, 658 F.3d 1260, 1269–70 (11th Cir. 2011), and we are bound by that decision.[3] See Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels . . . ."). If a plaintiff cannot show that a statute is unconstitutional in a substantial number of its applications, as overbreadth challenges require, he certainly cannot show that all applications of it are unconstitutional. See Wash. State Grange, 552 U.S. at 449 & n.6, 128 S. Ct. at

_____

[3] Wright argues that the version of Ordinance § 20-30 we addressed in Catron is different from the one we are addressing here. The City amended § 20-30 after Catron to add an appeal procedure (which has since been invalidated because of a problem in the enactment process), and it slightly revised the language of what is now § 20-30(g), the provision that governs suspension of trespass warnings. But officers' authority to issue trespass warnings that exclude offenders from public property has not been changed since Catron, so that decision still controls. See Catron, 658 F.3d at 1270.

7

1190 & n.6; see also United States v. Martinez, 736 F.3d 981, 991 (11th Cir. 2013) (Carnes, C.J., concurring) (stating that the difference between a regular facial challenge and an overbreadth challenge is "having to show that all applications of the statute are unconstitutional and having to show that a substantial number of them are") (emphasis added), vacated on other grounds, Martinez v. United States, 135 S. Ct. 2798 (2015).  It follows that Wright's facial challenge fails.

His as applied challenge does not fare any better.  Wright contends that Ordinance § 20-30 impinges on First Amendment rights because it restricts his access to a traditional public forum where he wants to engage in expressive activity.  The "rights of the state to limit expressive activity are sharply circumscribed" in traditional public fora such as city parks and streets.  Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S. Ct. 948, 954–55 (1983).  A law that restricts access to traditional public fora for expressive activity is subject to "First Amendment scrutiny."  McCullen v. Coakley, 573 U.S. ___, 134 S. Ct. 2518, 2526, 2529–30 (2014).  If the restrictions are content-neutral and prescribe the time, place, and manner of expression, they must be narrowly tailored and leave open alternative means of communication.  Perry, 460 U.S. at 45, 103 S. Ct. at 954–55.  If the restrictions are not content neutral, they must survive strict scrutiny.  Id.

We reject Wright's contention that Ordinance § 20-30 must be treated as a restriction on access to a traditional public forum for expressive activity, which would subject it to First Amendment scrutiny. The Supreme Court has explained that, in the context of legal remedies, First Amendment scrutiny applies "only where it was conduct with a significant expressive element that drew the legal remedy in the first place . . . or where [an ordinance] based on a nonexpressive activity has the <u>inevitable effect</u> of singling out those engaged in expressive activity." Arcara v. Cloud Books, Inc., 478 U.S. 697, 706–07, 106 S. Ct. 3172, 3177 (1986) (emphasis added).

In Arcara the state sought to close an adult bookstore under New York's Public Health Law because the bookstore doubled as a site of prostitution and illicit sexual acts. Id. at 698–702, 106 S. Ct. at 3173–75. The storeowners argued that the closure "impermissibly burden[ed] [their] First Amendment protected bookselling activities." Id. at 705, 106 S. Ct. at 3177. But because the illegal activity that prompted the closure "manifest[ed] absolutely no element of protected expression," and the statute did not "inevitably single out bookstores or others engaged in First Amendment protected activities for the imposition of its burden," the Supreme Court held that the closure did not implicate the First Amendment and as a result was not unconstitutional. Id. at 705, 707, 106 S. Ct. at 3176–77. The Court reasoned that First Amendment scrutiny of a law is not justified just because

9

the law has an incidental effect of burdening protected speech or expression. Id. at 705–06, 106 S. Ct. at 3177. For example, the Court explained, a "thief who is sent to prison might complain that his First Amendment right to speak in public places has been infringed because of the confinement, but we have explicitly rejected a prisoner's claim to a prison environment least restrictive of his desire to speak to outsiders." Id. at 706, 106 S. Ct. at 3177. By the same token, Wright also could have been incarcerated for his unlawful conduct, see Fla. Stat. § 843.02; id. § 775.082(4)(a), which for the duration of his incarceration would have prevented him from engaging in expressive conduct in any of the City's many public parks.

The Arcara decision provides the proper framework for analyzing Ordinance § 20-30.[4] Simply because the trespass warning incidentally burdened Wright's First Amendment activities does not mean that Ordinance § 20-30 is subject to First Amendment scrutiny, since "every civil and criminal remedy imposes some

---

[4] Wright's arguments to the contrary are unpersuasive. He argues that McCullen should apply instead of Arcara. In McCullen the Court held that First Amendment scrutiny applied to a statute that restricted access to sidewalks and streets around abortion clinics, but unlike that statute, Ordinance § 20-30 does not "categorically exclude[]," 134 S. Ct. at 2526, people from city parks. Instead, a trespass warning issues only when someone violates city or state law. The ordinance prohibited Wright from entering Williams Park only after he broke the law while in the park. Arcara, not McCullen, is on point.

Wright also argues that Arcara cannot apply here because that case involved a commercial establishment, which is not regulated the way that traditional public fora are. That misses the point. The question is whether First Amendment scrutiny applies to a law imposing a sanction on unlawful conduct when the law also happens to incidentally affect First Amendment activities. That was also the question in Arcara, and the answer the Supreme Court gave was no. The answer is the same here.

conceivable burden on First Amendment protected activities." Id. at 706, 106 S.

Ct. at 3177.[5]  Like the public health statute in Arcara, Ordinance § 20-30 sanctions

unlawful conduct.  Id. at 699–700, 707, 106 S. Ct. at 3173–74, 3177 ("The

legislation providing the closure sanction was directed at unlawful conduct having

nothing to do with books or other expressive activity.").  It also applies not just to

people who are entering a city park to exercise their First Amendment rights but

also to every other person who enters city property for any reason — runners,

picnic-lunchers, and drug dealers.  See Code § 20-30(b).  And there is no evidence

that the ordinance had the "inevitable effect of singling out" Wright or anyone else

engaged in expressive activities, just as the New York Public Health Law in Arcara

was not aimed at booksellers and did not inevitably single them out.  Arcara, 478

U.S. at 707, 106 S. Ct. at 3177; cf. Minneapolis Star & Tribune Co. v. Minn.

Comm'r of Revenue, 460 U.S. 575, 577–79, 581–82, 103 S. Ct. 1365, 1367–70

(1983) (holding that a statute imposing a special tax on ink and paper that applied

only to newspapers was subject to First Amendment scrutiny because it "singled

---

[5] For similar reasons we reject Wright's claim that Ordinance § 20-30 is an unlawful prior restraint.  The trespass warning allowed Wright to continue his expressive activities in other public areas.  See Arcara, 478 U.S. at 705 & n.2, 106 S. Ct. at 3177 & n.2.  And the trespass warning was not "imposed on the basis of an advance determination that [Wright's expressive conduct was] prohibited — indeed, [Wright's trespass warning] ha[d] nothing to do with any expressive conduct at all."  Id.

11

out the press for special treatment," even though it was targeted at a non-expressive activity).

Another reason that the application of Ordinance § 20-30 to Wright does not violate the First Amendment is that he cannot show that he received the trespass warning because he engaged in conduct with "a significant expressive element" or conduct that was "intimately related to expressive conduct protected under the First Amendment." Arcara, 478 U.S. at 706 & n.3, 106 S. Ct. at 3177 & n.3; see Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 n.5, 104 S. Ct. 3065, 3069 n.5 (1984) ("[It] is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."). Wright pleaded guilty to resisting an officer without violence or obstruction and was issued a trespass warning as a penalty for that offense. That is undisputed.

There is no evidence in the record that Wright was arrested as a pretext for suppression of speech protected by the First Amendment. See Arcara, 478 U.S. at 707 n.4, 106 S. Ct. at 3178 n.4 (rejecting a claim of pretextual enforcement because there was no evidence in the record that "the closure of [the] bookstore was sought under the public health nuisance statute as a pretext for the suppression of First Amendment [activity]."). Like the illegal sexual activity that prompted the closure of the bookstore in Arcara, Wright's arrest for obstruction and resisting arrest "manifest[ed] absolutely no element of protected expression." Id. at 705,

12

106 S. Ct. at 3176; see also Doe v. City of Lafayette, 377 F.3d 757, 760, 764 (7th Cir. 2004) (en banc) (upholding a ban indefinitely prohibiting a convicted sex offender from every city park because the conduct that drew the ban — entering a park to find children — "contain[ed] no more of an expressive element than the activity at issue in Arcara and therefore deserves no protection under the First Amendment").

Wright argues that his exclusion from Williams Park, of all parks, impermissibly burdened his First Amendment activities. As we have explained, any burden was incidental and even that incidental burden was mitigated by the fact that the ordinance allowed him to enter the sidewalks around Williams Park even while his trespass warning was in effect. See Code § 20-30(b)–(c). He was also free to enter the 141 other public parks in St. Petersburg (13 of which are in the downtown area) during that time. See Arcara, 478 U.S. at 705, 106 S. Ct. at 3177 (stating that any incidental burden that the closure imposed on the bookstore owners' First Amendment activities was "mitigated by the fact that [they] remain[ed] free to sell the same materials at another location"); see also Adderley v. Florida, 385 U.S. 39, 47–48, 89 S. Ct. 242, 247 (1966) (rejecting the assumption that "people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please"). And Ordinance § 20-30(g) also allowed Wright to apply for a suspension of his trespass warning

whenever he wished to re-enter Williams Park to engage in First Amendment activities, which he did on one occasion.

First Amendment scrutiny "has no relevance to [Ordinance § 20-30, which is] directed at imposing sanctions on nonexpressive activity." Arcara, 478 U.S. at 707, 106 S. Ct. at 3177. Wright's arguments to the contrary fail.

### B.    First Amendment Challenge to Ordinance § 20-30(g)

Wright separately challenges § 20-30(g) of the Ordinance, which allows the City to suspend a trespass warning and permit the offender back onto the property so that he can exercise his First Amendment rights or "conduct necessary municipal business." A suspension, that subsection says, "shall not be unreasonably denied." Code § 20-30(g). Wright contends that § 20-30(g) violates the First Amendment facially and as applied to him because it is a censorial prior restraint on speech. [6] We consider only Wright's as-applied challenge, because if § 20-30(g) can be validly applied to Wright, then it is not unconstitutional in all of its applications. See Wash. State Grange, 552 U.S. at 449, 128 S. Ct. at 1190.

---

[6] Wright also raises a Fourteenth Amendment vagueness challenge against Ordinance § 20-30(g). That challenge misses its mark because Ordinance § 20-30(g) does not prohibit conduct or impose punishment or sanction, but instead allows offenders to re-enter the property they are otherwise banned from. Cf. FCC v. Fox Television Stations, Inc., 567 U.S. ___, 132 S. Ct. 2307, 2317 (2012) ("A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.") (quotation marks omitted).

14

"A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." United States v. Frandsen, 212 F.3d 1231, 1236–37 (11th Cir. 2000); see also id. at 1237 (holding that a federal regulation that permitted "public assemblies, meetings, gatherings, demonstrations, parades, and other public expressions of views" in national parks "only if the park superintendent issue[d] a permit in advance of the activity" was a prior restraint) (quotation marks and alteration omitted).  Prior restraints generally occur in the context of licensing or permitting schemes.  See, e.g., id.; see also Forsyth Cty. v. Nationalist Movement, 505 U.S. 123, 130, 112 S. Ct. 2395, 2401 (1992) ("[An] ordinance requiring a permit and a fee before authorizing public speaking, parades, or assemblies in . . . a traditional public forum is a prior restraint on speech.") (citations and quotation marks omitted); Shuttlesworth v. City of Birmingham, 394 U.S. 147, 149–51, 89 S. Ct. 935, 937–38 (1969) (holding that an ordinance that made it unlawful to organize or hold "any parade or procession or other public demonstration" on city streets without securing a permit from the city commission was a prior restraint) (quotation marks omitted).  Because laws that impose prior restraints on speech raise fears of government censorship, see Thomas v. Chi. Park Dist., 534 U.S. 316, 320–21, 122 S. Ct. 775, 778–79 (2002), they face a "strong presumption against their constitutionality," Frandsen, 212 F.3d at 1237.  To pass constitutional muster "a law subjecting the exercise of First

15

Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority." Forsyth Cty., 505 U.S. at 131, 112 S. Ct. at 2401 (quotation marks omitted).

Section 20-30(g) did not impose a prior restraint on Wright's speech. Unlike cases involving permit requirements for expressive activity in places where the speaker has a lawful right to engage in it, see, e.g., Shuttlesworth, 394 U.S. at 149–50, 89 S. Ct. at 937–38; Frandsen, 212 F.3d at 1233, Wright had no right to be in Williams Park for one year after he received a trespass warning as a result of breaking the law in that park. Unlike prior restraints that preemptively restrict speech, § 20-30(g) offered a way in which Wright could engage in speech or other First Amendment activities in one place where he would otherwise not be permitted to be present. It is the opposite of a censorial prior restraint because it allows more speech, not less; it allows speech in more locations, not fewer.

Because of the discretion it gives to City officials, Wright raises the specter of § 20-30(g) of the ordinance being used in a way that discriminates against applicants on the basis of the content of their speech. See Catron, 658 F.3d at 1269 n.9 (noting that § 20-30(g) "may suffer" from the "problem[ ] of too much discretion," but declining to reach that issue). It is undisputed, however, that his request for a suspension under that provision is the only one the City has ever received, which rules out the possibility of past discrimination, and he points to no

16

evidence to show that selective enforcement is a realistic possibility in the future. A discriminatory enforcement claim can be brought only if a pattern of selective enforcement appears. See Thomas, 534 U.S. at 325, 122 S. Ct. at 781 (stating that it would be unconstitutional if officials waived park permit requirements for favored speakers while denying permits for disfavored speakers, but that "this abuse must be dealt with if and when a pattern of unlawful favoritism appears"). That has not happened.

### III.    Conclusion

The City of St. Petersburg Ordinance § 20-30 does not violate the First Amendment on its face, and neither is it unconstitutional as applied to Wright.  It did not inevitably single him out based on his expressive activity, and he did not receive his trespass warning because he was engaged in expressive conduct protected by the First Amendment.  Nor is § 20-30(g) of the ordinance an unlawful prior restraint on speech; it actually permits more speech, not less.

**AFFIRMED.**

17