[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-11290

Non-Argument Calendar

————————————

LISA JACKSON-CRAWFORD,

Plaintiff-Appellant,

*versus*

SCHOOL BOARD OF SEMINOLE COUNTY, FLORIDA,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-00641-WWB-DCI

————————————

Before NEWSOM, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

Lisa Jackson-Crawford appeals the district court's grant of summary judgment to the School Board of Seminole County Florida ("SBSC") in her civil action for retaliation in violation of Title VII, 42 U.S.C. §§ 1981 and 1983, and the Florida Civil Rights Act ("FCRA"). She argues that the district court erred in finding that she failed to prove causation and, should this court decide to address whether SBSC's allegations were pretextual, there is a disputed issue of fact precluding summary judgment. After review, we affirm.

## I.    Background

In 2021, Jackson-Crawford sued SBSC, alleging unlawful retaliation under Title VII, 42 U.S.C. §§ 1981 and 1983, and the FCRA. The complaint alleged that Jackson-Crawford, a black female, began working for SBSC in 2010 as an Exceptional Student Education ("ESE") Support Facilitator. In August 2016, Lake Brantley High School ("LBHS") hired Jackson-Crawford, where she remained until the non-renewal of her annual contract in May 2020.

Jackson-Crawford alleged that the non-renewal of her contract was unlawful retaliation for engaging in protected conduct—the filing of an Equal Employment Opportunity Commission ("EEOC") charge alleging racial discrimination.

Discovery revealed the following. Brian Blasewitz became principal of LBHS in June 2019. Prior to the start of the 2019–2020 school year, the school issued Jackson-Crawford's new schedule, assigning her to Elaine Kaub's and Kimberly Wheeler's respective classrooms, which required Jackson-Crawford to move between two different classroom buildings throughout the day[1] and gave her a seventh period planning period. Jackson-Crawford was dissatisfied with this schedule and met with Principal Blasewitz to discuss changing it. Specifically, she requested that her schedule be changed (1) to move her planning period to first period so that she could take her child to school, as she had historically had a first planning period; (2) to place all of her classes in the same building so that she did not have to move between buildings between class periods; and (3) to be assigned to Wheeler's classroom. Blasewitz reviewed her request and offered her an alternate schedule that would give her first period planning and place all of her classes in the same building, but she would be assigned to Norma Pelezo's classroom, another LBHS teacher, instead of Wheeler. However, Jackson-Crawford had previously taught with Pelezo and became frustrated with an unexpected leave of absence Pelezo took during that time, which caused more work for Jackson-Crawford. After considering the options, Jackson-Crawford chose to retain her original schedule assignment, which provided her with a seventh

---

[1] According to Jackson-Crawford, the two classroom buildings were "more than a football field or quarter mile apart."

period planning period and required her to move between buildings multiple times throughout the day.

That fall, Jackson-Crawford began experiencing issues with Assistant Principal McIntyre, who was her direct supervisor. For instance, between August and mid-October 2019, McIntyre observed the classrooms that Jackson-Crawford worked in on multiple occasions,[2] and yet, no notes or feedback on the observations appeared in the relevant online portal. Jackson-Crawford said that McIntyre's demeanor was "very cold" and "calculated." According to Jackson-Crawford, McIntyre did not say anything during these observations. Instead, she just sat in the back of the class watching, with a "very terrifying . . . look on her face." Jackson-Crawford felt that McIntyre's behavior "became harassment," resembled "stalking," and was "racially motivated." Jackson-Crawford was aware that another black male teacher had the same experience with McIntyre.

On October 17, 2019, Jackson-Crawford arrived for work after her first period class had started. She maintained in her deposition that, as an ESE support facilitator, she was not required to be in the classroom from "bell to bell"—in other words, the fact that she arrived after school had started and the first period bell had

---

[2] Part of McIntyre's duties included observing the teachers she supervised. Although Assistant Principal McIntyre's observations of Jackson-Crawford are not at issue in this case, we note that Principal Blazewitz stated that he had asked the assistant principals "to increase" their observations of teachers and "to regularly observe [them] as much as possible."

rung did not matter.[3] Jackson-Crawford also explained that she had an "understanding" with Knaub that she would be "running behind" relatively regularly. However, Jackson-Crawford had not talked to McIntyre about this arrangement because, according to Jackson-Crawford, the ESE teachers were told to work things out directly with their paired teachers. Jackson-Crawford had informed Knaub that she would be late on October 17, but unbeknownst to Jackson Crawford, Knaub had called out that day. Due to Knaub calling out that day and Jackson-Crawford being late, the first period students assigned to Knaub's class were unattended for a period of time.

As Jackson-Crawford approached the classroom building on the morning of October 17, Assistant Principal McIntyre and Assistant Principal Colleen Windt were standing outside, and McIntyre started shouting something at Jackson-Crawford and pointing to her wrist area where a watch typically would be located. Jackson-Crawford could not make out what McIntyre was saying, and she did not like the way McIntyre was speaking or acting towards her. As she got closer to McIntyre, Jackson-Crawford told her that "[i]f you need to speak to me, . . . [t]his is not the time and the place for it. . . . We can have a conversation in

---

[3] However, the school's employee handbook provided that each teacher's contracted "hours of work" were from 7:05 a.m. to 2:35 p.m., and no exceptions were listed for ESE teachers. No one disputes that these hours were incorporated by reference into the Seminole Education Association ("SEA") teacher's union agreement that governed the conditions of employment for its members, including Jackson-Crawford.

your office, and we can sit down and speak like adults professionally." According to Jackson-Crawford, McIntyre continued to speak over Jackson-Crawford and criticize her for being tardy. Jackson-Crawford stated that she told McIntyre this was not "the appropriate place for this" conversation, and she went to report the situation to Principal Blasewitz.

Jackson-Crawford was "bawling" when she got to Blasewitz's office. She reported the incident and her belief that McIntyre was harassing her and that McIntyre's behavior had reached a "stalking" level. Blasewitz said that he would speak with McIntyre, but Jackson-Crawford was dissatisfied with his response and told him that she intended to file a complaint with the district.

Jackson-Crawford filed a formal complaint with Human Resources ("HR") against McIntyre for "discrimination and harassment" concerning the October 17, 2019, incident and the perceived harassment from the classroom observations. The district conducted an investigation and was "unable to substantiate discrimination and/or harassment on the part of [Assistant Principal] McIntyre." According to the investigative report, both Assistant Principal McIntyre and Principal Blasewitz had observed Jackson-Crawford arriving to her classes after the bell rang on a regular basis, particularly her first period class, and moving slowly between classes. Assistant Principal Windt, who was present during the October 17 encounter between McIntyre and Jackson-Crawford, confirmed McIntyre's version of events and that McIntyre spoke calmly and professionally to Jackson-Crawford.

The report also relayed that McIntyre informed Jackson-Crawford that she needed to "be in the classroom on time and when the class starts."  Thus, after speaking to a number of witnesses and gathering evidence, the district concluded that the alleged behavior did not rise to the level of harassment or discrimination.  However, as a result of the complaint, McIntyre ceased interacting with Jackson-Crawford, consistent with Jackson-Crawford's request, and Principal Blasewitz took over supervising Jackson-Crawford.

Unhappy with the outcome of the investigation, Jackson-Crawford filed a complaint for racial discrimination with the EEOC on January 13, 2020.  Blasewitz and McIntyre learned of the EEOC charge around January 31, 2020.

According to Jackson-Crawford, after she filed the charge, "the tone of the workplace changed."  "[N]o one wanted to speak to [her,]" and fellow teachers stopped coming to her for things. McIntyre avoided her completely, and Blasewitz "kind of did the same," although he would exchange "pleasantr[ies]" on occasion. Jackson-Crawford confirmed that she completed the school year, that her schedule and duties remained the same, and that she did not experience any other incidents of discrimination or harassment.  At no point did the school formally issue any type of disciplinary or corrective action for Jackson-Crawford's alleged tardiness.[4]

---

[4] Blazewitz characterized the October 17, 2019, incident—where students were left unattended because Knaub called out and Jackson-Crawford was late—as "a serious and dangerous incident," and he stated that he verbally

Jackson-Crawford was notified on May 27, 2020, that the school was not renewing her annual contract for the upcoming school year.[5]  She believed that her contract was not renewed in retaliation for her filing the EEOC charge, although she never spoke to Blasewitz or McIntyre about the non-renewal or the reasons for it.  Although she did not receive the notice of non-renewal until late May 2020, Jackson-Crawford maintained that the decision to not renew her contract was made "sometime between February 2020 and April 2020."

In a sworn affidavit, Principal Blazewitz stated that, between August 2019 and October 2019, he "personally observed" Jackson-Crawford arriving to school after the start of first period "on multiple occasions[.]"  On these occasions, he observed her "walking very slowly and without haste."  He also received reports from other school personnel that Jackson-Crawford was "habitually late to work in the mornings and to her assigned classes throughout the day."  Her tardiness in the morning and in-between

---

"counsel[ed] [Jackson-Crawford] about her tardiness" when she came to his office to complain about McIntyre.  Jackson-Crawford disputes that he counseled her on her tardiness, and for purposes of this opinion, we accept her version of events.  *See Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1363 (11th Cir. 2007) (explaining that, at the summary judgment stage, we "view the evidence in the light most favorable to the non-moving party").

[5] It is undisputed that Jackson-Crawford had an annual contract of employment, which SBSC had no obligation to renew, and there was "no expectancy of continued employment beyond the terms of [the contract]." Her contract for the 2019–2020 school year ran from August 6, 2019, to May 29, 2020.

23-11290                Opinion of the Court                9

classes continued after October 17, 2019, up until the LBHS campus shut down in March 2020 due to the COVID-19 pandemic. According to Blazewitz, arriving after the start of class was a violation of Jackson-Crawford's employment contract and the collective bargaining agreement, as "[t]eachers [were] required and expected to be in class on-time and to be prepared to instruct and supervise students from bell-to-bell."

Blazewitz averred that "[o]n May 27, 2020[,] [he] made the decision" to not renew Jackson-Crawford's annual contract, and he e-mailed her to notify her of his decision. He explained that his decision to not renew Jackson-Crawford's contract was based on

> [her] continued disregard of her employment requirements[,] which put the safety of students at risk and resulted in violations of numerous School Board policies[,] her Employment Contract, and the collective bargaining agreement; Comments made by [Assistant Principal] McIntyre regarding her supervision of [Jackson-Crawford] from August through October 17, 2019; Comments by other administrators of their observations of [Jackson-Crawford] throughout the school year; [Jackson-Crawford]'s unreliableness; [Jackson-Crawford]'s work attitude which indicated a complete lack of respect for [the] administration, colleagues, and students; and [his] desire to find a better suited candidate.

Blazewitz confirmed that his decision to not renew Jackson-Crawford's contract "was not based on her complaints nor her [EEOC] Charge of Discrimination."

Assistant Principal McIntyre submitted an affidavit in which she stated that, between August and October 2019, she observed "Jackson-Crawford habitually arrive late to work, most times more than [15] minutes past the start of her contracted hours." Knaub, as well as the assistant principal that supervised Knaub, spoke to McIntyre about Jackson-Crawford's tardiness. According to McIntyre, she "calmly and quietly" approached Jackson-Crawford on the morning of October 17, 2019, explained the "seriousness" of the students being left unsupervised, and communicated the expectation that Jackson-Crawford should be in her assigned classes from "bell-to-bell." She said that Jackson-Crawford became "agitated," "yelled at [her]," "accus[ed] [her] of acting unprofessionally by not having the conversation . . . in private," and went to the principal's office. Because Jackson-Crawford requested that she no longer have contact with McIntyre, McIntyre ceased supervising Jackson-Crawford and had "no further contact with her."

Blazewitz said that "[t]he decision to recommend reappointment of a LBHS teacher after the expiration of their annual contract rest[ed] solely with [him]." And McIntyre stated that she "did not actively participate in the decision to not reappoint Ms. Jackson-Crawford." Regarding the timing of his decision, Blazewitz explained that "[a]lthough [he] [thought] about

employee re-appointments as early as mid-April of 2020, [he] did not make [his] final decision until May 27, 2020." But in response to interrogatories, SBSC said that "the persons who participated in the decision to non-renew [Jackson-Crawford's] expired annual contract are [] McIntyre and [] Blasewitz. The communication occurred in person and orally sometime between February and April, 2020[.]"

In a deposition, a fellow teacher and union representative testified that it would not be surprising to hear that "Jackson-Crawford was retaliated against for making her complaints" because the representative "[had] seen it happen in other cases with different administrators[.]" And the president of the teacher's union testified that, at the time, Florida was experiencing "a teacher shortage" and that he found it "mind boggling" not to renew a contract amid such a shortage.

SCBS moved for summary judgment, arguing that it decided not to renew Jackson-Crawford's contract because of her "failure to comply with the terms of various School Board policies, handbooks, Official Agreements and Contracts[,] coupled with the School Board's desire to appoint the best suited candidate"—not "as a retaliatory action[.]"

The district court granted the motion for summary judgment. It found that Jackson-Crawford could not establish a causal connection between Blasewitz's and McIntyre's knowledge of the EEOC charge on January 31, 2020, and the decision not to renew her contract on May 27, 2020, due to the four-month gap

between these dates.    It explained that, without temporal proximity, Jackson-Crawford needed to show other evidence to support causation but she failed to do so, as her other proffered evidence did not show "a pattern of antagonism" connected to the contract non-renewal.  The district court therefore concluded that Jackson-Crawford "failed to establish a sufficient prima facie case of retaliation[.]"

Jackson-Crawford timely appealed.

## II.    Standard of Review

We review a district court's grant of summary judgment *de novo*, "view[ing] the evidence in the light most favorable to the non-moving party." *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1363 (11th Cir. 2007).  Summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When a movant shows that no genuine dispute of material fact exists, the burden shifts to the non-movant to demonstrate that there is a genuine issue of material fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608–09 (11th Cir. 1991).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Further, "unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment

motion," as it does not create a genuine issue of material fact, but instead, "creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (alteration in original) (quotations omitted).

We may "affirm for any reason supported by the record, even if the district court did not rely on that reason." *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1294 (11th Cir. 2016) (quotations omitted).

### III.    Discussion

Jackson-Crawford argues on appeal that the district court erred in finding a lack of temporal proximity between the filing of the EEOC charge in January 2020 and the non-renewal of her contract because conversations related to the non-renewal of her contract occurred between February and April 2020—not May.[6] But even if we accept Jackson-Crawford's contention and assume that she established a *prima facie* case of retaliation, her retaliation

---

[6] To establish a *prima facie* case of retaliation, the plaintiff must show, among other things, a causal relationship between the protected expression (the filing of the EEOC charge) and the adverse action (the non-renewal of Jackson-Crawford's contract). *Thomas*, 506 F.3d at 1363. We have held that a three-to-four-month gap between the protected activity and the adverse employment action is too attenuated to satisfy the causation element of a retaliation claim, *id.* at 1364, but that a one-month period "is not too protracted," *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

claims still fail because, contrary to her assertions otherwise, she cannot show pretext.

Under Title VII of the Civil Rights Act, an employer may not retaliate against an employee because she has opposed any practice made unlawful under the Act or because she has made a charge or participated in a proceeding thereunder. 42 U.S.C. § 2000e-3(a). When, as here, a plaintiff attempts to use Title VII and 42 U.S.C. §§ 1981 and 1983 as parallel remedies for the same allegedly unlawful retaliation, the elements of the causes of action are identical and analyzed under the same framework. *See Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (discussing claims under Title VII and § 1983); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) ("Retaliation claims are also cognizable under 42 U.S.C. § 1981 and are analyzed under the same framework as Title VII claims."). Likewise, retaliation claims under the FCRA[7] are analyzed under the same

---

[7] The relevant text of the FCRA is materially identical to Title VII. The FCRA provides that it is unlawful for an employer "to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section." Fla. Stat. § 760.10(7). While that similarity does not necessarily mean that the two statutes are in lockstep, or that Eleventh Circuit cases *control* similar legal issues under the FCRA, Jackson-Crawford's failure to differentiate the two statutes gives us little choice but to consider them together.

framework as Title VII. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010).

A retaliation claim based on circumstantial evidence is commonly analyzed under the *McDonnell Douglas*[8] burden-shifting framework. *Johnson*, 948 F.3d at 1325. Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of retaliation. *Id*. To establish a *prima facie* case of retaliation, "a plaintiff must show: (1) that [she] engaged in statutorily protected expression; (2) that [she] suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Id*. (quotations omitted). If the plaintiff establishes a *prima facie* case of retaliation, "the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer meets that burden, then the burden shifts back to the plaintiff to prove that "the reason provided by the employer is a pretext for prohibited, retaliatory conduct[.]" *Id*. To satisfy this burden, a plaintiff "must present actual evidence . . . because conclusory allegations of [retaliation], without more, are not sufficient to raise an inference of pretext." *Ctr. v. Sec'y, Dep't of*

---

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *But see Tynes v. Florida Dep't of Juvenile Justice*, 88 F.4th 939, 947 (11th Cir. 2023) (explaining that "we are [always] answering the same question" when assessing Title VII claims, regardless of whether we analyze the claim under *McDonnell-Douglas* or look for a so-called convincing mosaic of circumstantial evidence).

*Homeland Sec., Customs & Border Prot. Agency*, 895 F.3d 1295, 1303 (11th Cir. 2018) (alteration adopted) (quotations omitted).

A plaintiff can show pretext by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies[,] or contradictions" in the proffered reason for the employment action such that "a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (quotations omitted). "If the proffered reason is one that might motivate a reasonable employer," the plaintiff must "meet it head on and rebut it" instead of merely quarreling with it. *Id*. at 1350 (quotations omitted). "A reason is not pretext for retaliation unless it is shown *both* that the reason was false, *and* that retaliation was the real reason." *Gogel*, 967 F.3d at 1136 (en banc) (alterations adopted) (emphasis in original) (quotations omitted). We have "repeatedly and emphatically held" that employers may terminate an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a [retaliatory] reason." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (quotations omitted). And an employer's honest, good-faith belief based on information that the employee violated its policies can constitute a legitimate reason for termination, even if the employer's belief may have been mistaken. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

Further, "a plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the

alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  "Stated another way, a plaintiff must prove that had she not complained, she would not have been fired." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018).

Here, SBSC "articulate[d] a legitimate, non-retaliatory reason" for not renewing Jackson-Crawford's contract. *Pennington*, 261 F.3d at 1266.  Blasewitz stated that he decided not to recommend her contract for renewal for various, non-retaliatory reasons, including (1) her "continued disregard of her employment requirements[,] which put the safety of students at risk and resulted in violations of numerous School Board policies[,] her Employment Contract, and the collective bargaining agreement"; (2) comments throughout the year by McIntyre and other administrators about Jackson-Crawford; (3) Jackson-Crawford's "unreliableness"; and (4) Jackson-Crawford's "work attitude[,] which indicated a complete lack of respect for [the] administration, colleagues[,] and students[.]"[9]

The burden then shifted to Jackson-Crawford to prove that SBSC's reasons are "pretext for prohibited, retaliatory conduct[.]"

---

[9] Although Jackson-Crawford contends that she "was never disciplined" or warned about her alleged tardiness, she was on notice that the administration took issue with her habitual tardiness.  She stated in her deposition that she saw McIntyre gesturing toward her watch as she spoke to her on October 17, 2019, and she said in her declaration that McIntyre "criticized [her] for being tardy."  Furthermore, the HR investigation into Jackson-Crawford's complaint documented that McIntyre informed Jackson-Crawford that she needed to "be in the classroom on time and when the class starts."

*Id.* But Jackson-Crawford failed to present actual evidence showing that SCBS's proffered reasons were false and that "retaliation was the real reason." *Gogel*, 967 F.3d at 1136 (en banc). Rather, the evidence shows that Jackson-Crawford was in fact habitually late to her first-period class in violation of policies that required her to be on campus between 7:05 A.M. and 2:35 P.M. She admitted in her deposition to regularly arriving late in the morning, and Blasewitz and McIntyre also stated that they personally observed her continued tardiness.

Although Jackson-Crawford argues that, as an ESE support facilitator, she was not required to be in the classroom from bell-to-bell, she presented no evidence aside from her conclusory allegations to support this contention.[10] And regardless, our inquiry

> centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head. . . . The question is whether [the] employers were dissatisfied with [the employee] for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those [reasons] as cover for discriminating against her. . . .

---

[10] Further, Jackson-Crawford did not present any concrete evidence showing that she was late because, rather than arriving behind schedule, she was pursuing other duties as an ESE support facilitator.

*Id.* at 1148 (en banc) (quotations omitted). Here, there was ample evidence that the employer believed that Jackson-Crawford was habitually late and that her behavior violated school policy, which is a legitimate non-retaliatory reason for not renewing her contract. While Jackson-Crawford disagrees, "it is not enough to quibble" with SBSC's reasons. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1341 (11th Cir. 2023). She presented no evidence to undermine the genuineness of SBSC's beliefs or that tends to demonstrate that unlawful retaliation was the real reason for the non-renewal of her contract.

Nor are Jackson-Crawford's retaliation claims saved by her arguments that her contract non-renewal is inconsistent with SBSC's teacher shortage and that a union representative believed her non-renewal was retaliation. First, the teacher shortage is not—without more—relevant evidence to whether SBSC's decision was based on a retaliatory reason. And second, the testimony of the union representative did not rely upon specific, concrete evidence. *Walker*, 911 F.2d at 1577 ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." (quotations omitted)). Instead, it relied upon "conclusory allegations" and speculation, which are insufficient to "raise an inference of pretext." *Customs & Border Prot. Agency*, 895 F.3d at 1303. Accordingly, we disagree with Jackson-Crawford's position that the evidence establishes a genuine dispute of material fact as to whether SBSC's proffered reasons for not renewing her employment were pretextual.

Moreover, even if we accept that Jackson-Crawford's arguments show that retaliation may have been a motivating factor among others in the decision to not renew her contract, her claim still fails. "[I]t is not enough to show simply that retaliation was a motivating factor among others in the adverse action." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1277 (11th Cir. 2021); *Yelling*, 82 F.4th at 1340 ("Where but-for causation is required, a plaintiff with evidence of only a tagalong forbidden consideration cannot meet her summary judgment burden because she cannot show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." (quotations omitted)). "The but-for standard asks whether a particular outcome would not have happened but-for the purported cause." *Yelling*, 82 F.4th at 1338 (quotations omitted). And Jackson-Crawford failed to show that "had she not complained, she would not have been fired." *Jefferson*, 891 F.3d at 924.

## IV.    Conclusion

We conclude that Jackson-Crawford cannot show that SBSC's reasons for not renewing her contract were pretext for unlawful retaliation, or that unlawful retaliation was the but-for cause of the non-renewal, even though the district court did not reach these issues. *Wright*, 833 F.3d at 1294. We therefore affirm the district court's grant of summary judgment to SBSC.

**AFFIRMED.**