**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10616

Non-Argument Calendar

————————————

DAVID A. DIEHL,

*Plaintiff-Appellant,*

*versus*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:20-cv-00530-JLB-PRL

————————————

Before NEWSOM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

David A. Diehl, a federal prisoner proceeding pro se, seeks review of discovery orders and two dispositive orders resolving his civil case against prison officials.  In short, Diehl alleged that prison

officials negligently assigned him a dangerous cellmate and that one official battered him by pepper-spraying his cell following an attack by his cellmate. The district court granted the government's motion to dismiss the negligent-cell-assignment claim after concluding that it was barred by the Federal Tort Claims Act's (FTCA) discretionary-function exception. The court permitted discovery on the FTCA battery claim. Ultimately, the district court granted summary judgment to the government on the battery claim after concluding that the undisputed facts surrounding the officer's use of force did not demonstrate that the force was objectively unreasonable or so excessive as to overcome the presumption of good faith afforded corrections officers under Florida law.

Diehl now appeals the dismissal of his negligent-cell-assignment claim, arguing that the discretionary-function exception does not apply here. He also appeals several discovery rulings: the striking of his discovery request as well as the denials of his motions to extend the discovery deadline, to compel discovery, and for reconsideration. Finally, he appeals the grant of the government's motion for summary judgment on his battery claim, contending that there was a genuine issue of material fact. After careful review, we affirm the district court's orders.

## I

Whether the government is entitled to application of the discretionary-function exception to the FTCA is a question of law that we review de novo. *Cohen v. United States*, 151 F.3d 1338, 1340 (11th Cir. 1998).

The FTCA waives the United States' sovereign immunity from suit in federal courts for the negligent actions of its employees taken "while acting within the scope of . . . employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see Cohen*, 151 F.3d. at 1340. However, the discretionary-function exception precludes government liability for claims based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency" or government employee. *Cohen*, 151 F.3d at 1340 (quoting 28 U.S.C. § 2680(a)). If the discretionary-function exception applies, the claim must be dismissed for lack of subject matter jurisdiction. *Id.*

In determining whether the discretionary-function exception applies, we first consider "the nature of the conduct" and whether it involves "an element of judgment or choice." *Id.* at 1341. "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* (citation modified). "The Supreme Court has repeatedly said that the discretionary-function exception applies *unless* a source of federal law 'specifically prescribes' a course of conduct." *Shivers v. United States*, 1 F.4th 924, 931 (11th Cir. 2021) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). "Second, if the conduct involves the exercise of judgment, we must determine whether that judgment is grounded in considerations of public policy." *Cohen*, 151 F.3d at 1341. "In making this

determination, we do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed . . . political policy considerations before acting," but rather evaluate whether the nature of the actions taken are susceptible to policy analysis. *Id.* Only if the plaintiff's claim survives the discretionary-function exception, do we address the merits of the plaintiff's argument. *Martin v. United States*, 605 U.S. 395, 402 (2025).

This Court has previously held that inmate housing-placement decisions involve a discretionary function. *Cohen*, 151 F.3d at 1344 (11th Cir. 1998); *Shivers v. United States*, 1 F.4th 924, 929 (11th Cir. 2021).

In *Cohen*, we held that the discretionary-function exception applied to bar a suit alleging that the BOP negligently classified and placed in a minimum-security prison an inmate who attacked and seriously injured the plaintiff. 151 F.3d at 1339, 1344. First, we concluded that, although 18 U.S.C. § 4042 imposes on the Bureau of Prisons a general duty of care for prisoners, the BOP retained sufficient discretion in the means it may use to fulfill that duty. *Id.* at 1342–43. Second, we concluded that deciding how to classify and place prisoners is "part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." *Id.* at 1344. We explained that—

> [t]his case exemplifies the type of case Congress must have had in mind when it enacted the discretionary function exception. Under Cohen's theory, anytime a prisoner is injured by another prisoner, he can bring

> an action claiming that the BOP was negligent in classifying the prisoner who committed the assault and placing him in the institution at which the attack occurred, . . . or in not providing more guards, and so forth. Such second-guessing of the BOP's discretionary decisions is the type of thing avoided by the discretionary function exception . . . .

*Id.* (emphasis added). Accordingly, we held, the discretionary-function exception applied. *Id.*

Similarly, in *Shivers*, an inmate sued under the FTCA after his "mentally unstable" cellmate stabbed him in the eye with a pair of scissors. 1 F.4th at 926–27. The plaintiff alleged that prison officials knew or should have known that his cellmate had a history of assaulting cellmates. *Id.* at 927. We relied on *Cohen* to find that BOP's decision to house the plaintiff with his cellmate fell "squarely within the discretionary function exception." *Id.* at 929.

Diehl's arguments are foreclosed by our prior precedents holding that BOP housing placement decisions involve a discretionary function. His chief argument—that the discretionary-function exception doesn't apply when attacks are foreseeable—relies on a 60-year-old non-binding district court case. *Cohen v. United States*, 252 F. Supp. 679 (N.D. Ga. 1966), *rev'd*, 389 F.2d 689 (5th Cir. 1967). This will not do. The district court here did not err in dismissing Diehl's claim.

**II**

A district court's discovery decisions are reviewed for abuse of discretion. *United States v. R&F Properties of Lake Cnty., Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Betty K Agencies, Ltd v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005) (citation modified). "[D]iscovery rulings will not be overturned unless it is shown that they resulted in substantial harm to the appellant's case." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) (citation modified).

Even though we construe pro se pleadings liberally, pro se parties must follow procedural rules. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam).

A district judge or authorized magistrate judge must enter a scheduling order that controls the course of the proceedings. Fed. R. Civ. P. 16(b). Such a scheduling order may be modified only for good cause. Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (citation modified). Similarly, in general, when there is a timeframe within which a party must perform some act, the district court may extend the deadline for good cause if a party requests the extension before the original deadline expires. Fed. R. Civ. P. 6(b)(1)(A).

Here, the district court's discovery rulings were not an abuse of its discretion. First, Diehl's amended discovery request: The district court did not abuse its discretion when it struck Diehl's amended discovery request from the record, reasonably concluding that it was intended for opposing counsel but erroneously filed with the court.

Second, the court denied Diehl's motion to extend discovery on the ground that he hadn't shown good cause for the extension. In Diehl's motion, he argued that he needed the additional time because the government had failed to answer questions, produce documents, and respond to his amended discovery request. The government rejoined that it had served Diehl with responses to his first requests for production and that it wasn't required to respond to Diehl's second request because it was untimely filed. The district court agreed that the second discovery request was untimely filed. The discovery deadline in the case was January 3, 2023, which meant that all discovery requests needed to be filed on or before December 1, 2022. Diehl's second discovery request was dated December 3, 2022, and the mailing envelope indicated it wasn't given to the BOP until December 8, 2022. In either event, the request was untimely. Because the government responded to Diehl's first request for discovery and wasn't required to respond to his second request, Diehl lacked good cause to motion for the extension of discovery. The district court didn't abuse its discretion in denying the motion.

Third, the district court denied the motion to compel both because it was untimely (and because Diehl failed to establish good cause) and on the merits. With respect to timeliness, Diehl's motion was dated January 18, 2023 and the envelope was postmarked January 20, 2023. The deadline for the filing of discovery motions was January 17, 2023. Because Diehl didn't set forth any basis for finding good cause and excusable neglect for the late filing, the district court denied the motion. This was not an abuse of discretion.

Finally, the district court construed Diehl's motion for reconsideration of the discovery orders as an objection to the magistrate judge's nondispositive orders and ultimately chose not to set aside the orders because they were not "clearly erroneous or [] contrary to law." Fed. R. Civ. P. 72(a). Because we conclude that the district court didn't abuse its discretion in issuing any of the challenged discovery orders, we also conclude that it didn't abuse its discretion in denying Diehl's motion for reconsideration of those orders.

## III

We review the district court's ruling on summary judgment de novo. *Smith v. LePage*, 834 F.3d 1285, 1291 (11th Cir. 2016). We will affirm the district court's grant of summary judgment if there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). We view the record in the light most favorable to the non-movant and make all reasonable inferences in his favor. *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). A genuine issue of

material fact is one that can be properly found only by a factfinder because it "may reasonably be resolved in favor of either party." *Smith*, 834 F.3d at 1291 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). We may consider only the evidence that was before the district court when it decided the motion for summary judgment. *Chapman v. Al Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000). We may "affirm for any reason supported by the record, even if the district court did not rely on that reason." *Wright v. City of St. Petersburg, Fla.*, 833 F.3d 1291, 1294 (11th Cir. 2016) (citation modified).

"Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment. An unsworn statement is incompetent to raise a fact issue precluding summary judgment." *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citation omitted). "A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for a sworn affidavit or sworn declaration for purposes of summary judgment if certain statutory requirements are met." *Id.* "Specifically, under § 1746, . . . the declarant [must] date[] and subscribe[] the document as true under penalty of perjury in substantially the following form: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" *Id.* (quoting 28 U.S.C. § 1746(2)).

The FTCA provides that plaintiffs may bring claims of "assault [and] battery" for "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C.

§ 2680(h).  Under the FTCA, the United States is liable only "in accordance with the law of the place where the act or omission occurred."  *Id.* § 1346(b)(1).

Under Florida law, "[b]attery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th Dist. Ct. App. 2005). "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d Dist. Ct. App. 1996).  Florida corrections officers are "authorized to apply physical force upon an inmate only when and to the extent that it *reasonably* appears necessary . . . [t]o defend [themselves] or another against . . . imminent use of unlawful force," "[t]o quell a disturbance," or "[t]o overcome physical resistance to a lawful command."  *See* Fla. Stat. § 944.35(1)(a)(1), (4), (5) (emphasis added).  Contractor-employed correctional officers "may use nondeadly force" to "defend oneself or others against physical assault," "prevent the commission of a felony or a misdemeanor," and "enforce institutional regulations and orders."  *Id.* § 944.105(4)(a), (b), (d).  Moreover, "a presumption of good faith attaches to an officer's use of force . . . and an officer is liable for damages only when the force used is clearly excessive."  *Sanders,* 672 So. 2d at 47.

We have noted that "[p]epper spray is an especially noninvasive weapon and may be one very safe and effective method of handling a violent suspect who may cause further harm to himself

or others." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1245 (11th Cir. 2003). "Given that pepper spray ordinarily causes only temporary discomfort, it may be reasonably employed against potentially violent suspects, especially those suspects who have already assaulted another person and remain armed." *Id.*

At summary judgment, Diehl presented his version of the events in an unsworn declaration. As already explained, an unsworn declaration may substitute for a sworn affidavit if the declarant states "under penalty of perjury that the foregoing is true and correct," 28 U.S.C. § 1746(2), but Diehl didn't do so here. Diehl also presented a "Discipline Hearing Officer Report" containing the BOP's determination that he had fought with his cellmate, Alexander Ballard, as well as a "Regional Administrative Remedy Appeal" containing his own statement that he had not fought Ballard but was instead attacked and that corrections officer John Irvine did not respond to the attack until "well after" it was over.

The government presented the declaration of Officer Irvine. Irvine explained that while making his rounds he witnessed Diehl and Ballard striking one another with closed fists in their cell. He stated that he ordered the inmates to stop fighting and submit to hand restraints, but both inmates ignored him. At that point, he determined it was necessary to use pepper spray (oleoresin capsicum or "OC") to stop the fight. He stated that, consistent with protocol, he yelled "OC OC OC" before deploying one two-second burst of spray through the cell's food slot. At that point, he was

able to cuff the inmates.  They were decontaminated and evaluated by medical staff.

The district court granted summary judgment to the government after concluding that the undisputed facts surrounding the officer's use of force did not demonstrate that the force was objectively unreasonable or so excessive as to overcome the presumption of good faith afforded corrections officers under Florida law. Even if Diehl did not fight Ballard and Officer Irvine arrived after the attack, the court reasoned, it was undisputed that Ballard was dangerous and had just injured Diehl.  It is also undisputed that Officer Irvine was alone.  Thus, the district court concluded, "[t]he circumstances here would have suggested to 'a reasonable officer on the scene' that Ballard still posed a threat to [Diehl] and any staff who entered the cell."  Dist. Ct. Ord., Oct. 16, 2023, at 15 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Based on our precedent involving the use of pepper spray, we agree that Officer Irvine's conduct was neither objectively unreasonable nor excessive. *See, e.g., McCormick*, 333 F.3d at 1245 (concluding, in the Fourth Amendment context, that because "pepper spray ordinarily causes only temporary discomfort, it may be reasonably employed against potentially violent suspects, especially those suspects who have already assaulted another person and remain armed"); *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (concluding, in the Eighth Amendment context, that "a limited application of [pepper spray] to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force").

**AFFIRMED.**